FREEMAN, adm'r, *et al. v.* BREWSTER, ordinary, for use.

1. If the proceeds of a check or draft be rightfully the property of a ward, and they reach the hands of his guardian in consequence either of the collection or the negotiation of such check or draft, it matters not as to whether the draft itself or the indorsements upon it were regular or irregular; and no proof of signing or indorsement is requisite.

2. Where two guardians jointly appointed for the same ward execute a joint bond for the faithful performance of their trust, each of them is a security upon the bond for the other; and both they and their sureties upon the same bond are responsible for a *devastavit* committed by either.

3. In an action upon the bond for a breach thereof, the suit being brought by the ordinary for the use of the ward, after the latter had attained his majority and after demand made by him, proof that either of the guardians received assets of the ward during his minority and while the letters of guardianship were in force, will cast upon the defendants in the action the burden of accounting for a legal disposition of such assets, either before or after the ward arrived at majority.

4. Admissions made by one of the guardians after the letters of guardianship were revoked would not affect the other guardian or the sureties upon the bond; and the particular admission made in this case was not rendered admissible against them upon the ground that the guardian who made it was dead at the time of the trial, the admission as a whole not being against his interest, inasmuch as his entire statement, if taken as true, would discharge him from one debt by charging him with another, thus leaving his interest balanced as a result of the admission.

5. The knowledge of an attorney at law of the contents of an insurance policy, the identity of the beneficiaries named therein, the collection of the money and the payment of the same to his client, having been acquired while acting in his professional capacity under employment to collect the policy, and by reason of this relationship, he is an incompetent witness to testify to these facts, and it was error to admit his evidence.

6. A letter is not admissible in evidence without proof of its being genuine, and this proof cannot be supplied solely by what appears on the face of the letter itself, to wit the contents, the letterhead, etc.

April 2, 1894.   Argued at the last term.

Action on bond.   Before Judge HARRIS.   Coweta superior court.   September term, 1892.

P. H. BREWSTER and L. R. RAY, for plaintiffs in error.

A. D. FREEMAN, H. A. HALL and R. W. FREEMAN, *contra.*

SIMMONS, Justice.

1. Mrs. Stallings had her life insured by the St. Louis Life Insurance Company for the benefit of her children, William, Edward and Nicholas.   After her death Watkins Orr and Henry Orr were appointed guardians of Nicholas.   The present action was brought by the ordinary for the use of Nicholas, after he became of age, against Henry Orr and the administrator of Watkins Orr, as principals, and against L. R. and John D. Ray, as sureties, upon the bond given by Watkins and Henry Orr as guardians, to recover a sum alleged to have been collected by said guardians from the insurance company as the share of Nicholas in the proceeds of this insurance.   There was a verdict for the plaintiff, and the

defendants made a motion for a new trial, which was overruled, and they excepted.

It appears that the insurance company paid the amount due upon the policy by means of a draft payable to its order, drawn by the Mechanics Bank of St. Louis on the National Bank of the Republic, of New York. One of the grounds of the motion for a new trial was, that the court erred in admitting this draft in evidence, over the objection of the defendants that it was not shown to have been indorsed by the insurance company, nor by Henry Orr, and that the indorsement of Caslin, cashier, which appeared on the draft, if sufficient to pass the title to the draft at all, made part of it payable to Watkins Orr and Henry Orr as individuals, and not as guardians. The court did not err in overruling these objections. It appears from the evidence that the draft was left at the First National Bank of Newnan, with direction that the draft be paid over on the surrender of the policy and the signing a receipt for the money. The draft was indorsed as follows: " Pay Robert Orr, Watkins Orr and Henry Orr, guardians, or order. J. G. Caslin, Cash." Watkins Orr went to the bank, together with Robert Orr, who had been appointed guardian of the other children, William and Edward, and each indorsed the draft and signed a receipt for the money, Watkins Orr signing also the name of Henry Orr, saying he had been authorized by the latter to do so; and the money was paid over to them. It thus appears that the amount due Nicholas Stallings under the policy came into the hands of his guardians; and this being so, it does not matter whether the indorsement or the draft itself was irregular or not. If the guardians obtained the money on the draft and it belonged to their ward, they are responsible for it, it matters not how they obtained it.

2, 3. It was argued that Henry Orr was not liable for

this money, because there was no proof that he received any part of it, or that he authorized Watkins Orr to indorse the draft in his (Henry's) name, or to sign his name to the receipt. We do not think this point is well taken. We think, where two guardians appointed for the same ward unite in giving a joint bond for the faithful performance of their trust, each of them is a security upon the bond for the other, and both they and their sureties upon the same bond are responsible for a *devastavit* committed by either. And where it is shown, in an action of this kind, that one of the guardians, during the minority of the ward and while the letters of guardianship were in force, received assets belonging to the ward, the burden is cast upon the defendants to show that a legal disposition of such assets was made, either before or after the ward arrived at majority.

4. It appears from the record that the letters of guardianship of Watkins and Henry Orr were revoked in 1873, on the application of their sureties. Walter Orr, who resided in Texas, had removed Nicholas Stallings to that State and had been appointed his guardian there. The court allowed the plaintiff, over the objection of the defendants, to prove by William Stallings that in 1875 Watkins Orr told him that as guardian of Nicholas, he had collected about a thousand dollars on the life insurance policy of his ward's mother, and had paid the money to Walter Orr upon his private debt due said Walter, and that he paid it in 1873, while Walter was in Georgia and before he had carried Nicholas to Texas or been appointed his guardian. At the time of the trial Watkins Orr was dead. We think the admissions of Watkins Orr, made after his letters of guardianship had been revoked, ought not to have been received in evidence to charge the other guardian or the sureties on the bond. The letters having been revoked, no act or admission on the part of one of them in regard to the

disposition of the assets of the ward could bind the other or his sureties. Nor did the fact that the one who made the admission was dead at the time of the trial render it admissible. The admission was not against his interest, for taking his whole statement as true, it would discharge him from one debt by charging him with another, thus leaving his interest balanced as a result of the admission.

5. J. B. S. Davis, an attorney at law, was introduced and sworn as a witness to prove the contents of the insurance policy, the identity of the beneficiaries therein, and the collection of the money and the payment of the same to the guardians. It appears that he was employed by the guardians to collect the money on the policy; and it was objected that he was incompetent as a witness, because all the knowledge he had as to the matters referred to was obtained by reason of his employment as attorney. We think the court erred in admitting the testimony of this witness. The act approved August 4th, 1887, declares that "no attorney shall be competent or compellable to testify in any court in this State, for or against his client, to any matter or thing knowledge of which he may have acquired from his client by virtue of his relations as attorney, or by reason of the anticipated employment of him as such attorney." (Acts 1887, p. 30.) The knowledge of this witness as to the facts sought to be proved by him, having been acquired while he was acting in his professional capacity, under employment to collect the policy, and by reason of such employment, we think the act referred to rendered him incompetent to testify to these facts. In our opinion, his incompetency does not relate solely to admissions made by the client, as was contended by counsel for the defendant in error, but relates to all facts knowledge of which he obtained concerning his client's case pending his employment. In the

case of *Skellie* v. *James*, 81 *Ga.* 419, relied upon by counsel for the defendant in error, the attorney represented a loan company, and his knowledge as to the loan about which he was introduced as a witness, was acquired, not as attorney for the borrower, who was the party objecting to his testimony, but as attorney of the loan company, which was not a party to the case on trial.

6. We think the court erred in not excluding the letter signed " J. G. Caslin, Cash.," there being no proof that the letter was genuine.   This proof could not be supplied solely by what appeared on the face of the letter itself, to wit the contents, the letter-head, etc. *Johnson & Shahan* v. *Railroad*, 90 *Ga.* 810 (5).

Judgment reversed.