# Richmond.

## BENTON v. COMMONWEALTH.

### MARCH 28, 1895.

Absent, Keith, P.,* and Buchanan, J.

1. CRIMINAL LAW—*Discharge from Prosecution—New Trial.*—A prisoner is not entitled to be discharged from prosecution for an offence merely because a new trial has been granted him on the ground that his case had been erroneously continued at one term of a county court on the motion of the commonwealth, against his protest.

2. CRIMINAL LAW—*" Speedy Trial"—Section 4047 of the Code.*—What is meant by the "speedy trial" guaranteed by the Constitution, and what is the delay in the trial of one charged with felony, which shall forever discharge him from prosecution, are sufficiently interpreted by sec. 4047 of the Code, and this interpretation has been repeatedly sanctioned.

3. CRIMINAL PROCEDURE—*New Trial—Former Jeopardy — Waiver—Indictment—Two Offences in One Count.*—When an accused is convicted of an offence and applies for and obtains a new trial, he thereby waives his former jeopardy and subjects himself to further trial. And where more than one offence is distinctly or substantially charged in one count of an indictment, and there has been a verdict of conviction thereon, which has been set aside, and a new trial awarded, on such new trial the accused shall remain liable to be convicted of any offence charged in the indictment for which there is no severer penalty than for the offence of which he was convicted.

4. CRIMINAL LAW—*Housebreaking—Grand Larceny—Distinct Offences in One Count—Effect of Conviction Submitted to.*—Housebreaking with intent to commit larceny, and grand larceny, are distinct offences, and to each is affixed its own penalty, but they may be, and often are, one continued act, and may be charged in the same count of an indictment. Upon such count the accused may be found guilty of either or both offences, but there can be only one penalty imposed. If it is desired to punish for both offences, in a case of this kind, a separate count for

---

* Judge Keith had refused the writ of error in the Circuit Court.

Statement.

larceny must be inserted in the indictment. If there is a conviction generally, or of the grand larceny only, and it is submitted to, in either case, this is a bar to further prosecution.

5. CRIMINAL LAW—*"Higher Offence"*—*Case at Bar.*—As a general rule, what is a "higher offence" within the meaning of sec. 4040 of the Code is to be determined by the maximum of the penalty affixed to the offence. Applying this rule to the case at bar, housebreaking in the night time with intent to commit larceny, and grand larceny, are of equal degree, and a conviction of either, when set aside at the instance of the accused, is a waiver of his jeopardy as to both, and upon a new trial he may be put upon trial upon the whole indictment in which both are charged.

6. CRIMINAL PROCEDURE—*Indictment*—*Varying Counts.*—It is entirely permissible to describe the offence committed in various ways in separate counts of the same indictment, so as to meet the evidence as it may be adduced on the trial, and an indictment is not bad on demurrer, which in one count charges the accused with *breaking and entering* a house in the night time, and in another with entering *without breaking.*

7. CRIMINAL LAW—*"Meat-house"* a *"store-house."*—A "meat-house" is a "store-house" within the meaning of sections 3705 and 3706 of the Code, as amended by an act approved February 12, 1894 (Acts 1893-'94, chap. 217, p. 228).

8. CRIMINAL PROCEDURE—*Felony*—*Presence of Prisoner*—*Continuance.*—If it is necessary that one indicted for felony shall be personally present when a motion is made by his counsel for a continuance of his cause, and that the record shall show that; yet, if anything appears in the record from which his presence must be necessarily inferred, it is all that the law requires; and the fact that he appears by counsel does not show that he was not personally present in court.

Error to a judgment of the Circuit Court of Fauquier county rendered December 14, 1894, affirming the judgment of the County Court of said county rendered October 4, 1894, whereby the plaintiff in error was sentenced to confinement in the penitentiary for three years and six months.

*Affirmed.*

The offence for which the plaintiff in error was indicted was committed March 17, 1891, and he has been four times tried and convicted. The offence was committed in Loudoun

county, and the plaintiff in error was indicted in the County Court of that county August 8, 1892. At September term, 1892, he was tried and convicted by said County Court, and sentenced to the penitentiary for two years and six months. The judgment on this trial was reversed by the Circuit Court of Loudoun county, but the record does not disclose on what ground. He was again tried by the County Court of Loudoun county at its November term, 1892, and found guilty "as charged," and his term of imprisonment in the penitentiary fixed at two years. The judgment was set aside by this court because improper evidence was admitted against him on the trial. *Benton's case,* 89 Va. 570. He was again tried in said County Court at its March term, 1893, found guilty of "grand larceny," and sentenced to the penitentiary for two years and six months. The verdict and judgment was set aside by this court solely on the ground that the trial was had at the March term, 1893, of the said County Court, when it should have been at the February term, 1893, of said County Court, when the defendant was ready and anxious for a trial. But the order of reversal ordered *a new trial* to be had. *Benton* v. *Commonwealth,* 90 Va. 328.

After the case was remanded it was removed to the County Court of Fauquier county, where the new trial was had on October 4, 1894, and the plaintiff in error was again tried, found guilty "as charged," and sentenced to the penitentiary for three years and six months. The Circuit Court of Fauquier county by its judgment rendered on the 14th day of December, 1894, reversed the judgment of the County Court of Fauquier county of October 4, 1894, and ordered a new trial, but afterwards, during the same term of the court, on December 20, 1894, annulled its order of December 14, 1894, and entered up judgment affirming the judgment of the County Court rendered October 4, 1894. The present writ

of error is prosecuted to review the proceedings had on this last trial.

The opinion states the case.

*Jno. M. Orr* and *Garrett & Garrett*, for the plaintiff in error.

*Attorney-General R. Taylor Scott*, for the Commonwealth.

RIELY, J., delivered the opinion of the court.

The plaintiff in error, D. W. Benton, was jointly indicted with others in the County Court of Loudoun county at its August term, 1892, under section 3706 of the Code, for housebreaking in the night time with intent to commit larceny. He was convicted upon the indictment, and upon a writ of error to this court a new trial was awarded him, on the ground that improper testimony had been admitted against him by the trial court. *Benton* v. *Commonwealth*, 89 Va. 570. He was again convicted, and a new trial was again granted him by this court, because the case had been erroneously continued at one term for the Commonwealth against his protest. *Benton* v. *Commonwealth*, 90 Va. 328.

When the case went back the second time for a new trial, it was removed to the County Court of Fauquier county, in which, at its September term, 1894, a general verdict of guilty was found against him upon the indictment, and his punishment fixed by the jury at confinement in the penitentiary for three years and six months. Judgment was entered upon the verdict, and upon a writ of error to the Circuit Court the same was affirmed.

Upon the calling of the case at the May term, 1894, of the said court, the prisoner moved the court to dismiss the prosecution against him and discharge him from custody, upon the

ground that this court had decided, that by the erroneous continuance by the County Court of his case for the Commonwealth at its February term, 1893, he had been denied the "speedy trial" guaranteed to him by the Constitution, and for that reason had reversed the judgment entered against him at the following March term; and that therefore he could not be further prosecuted for the offence charged against him. The court refused to discharge him, and in this there was no error. In reversing the judgment this court simply awarded the prisoner a new trial. That was the full extent of the decision, as the records of this court show. The court did not decide that for such error the prisoner should be discharged from prosecution, and could not have intended that such should be the effect of such reversal.

What is meant by the "speedy trial" guaranteed by the Constitution of Virginia, and what is the delay in the trial of one charged with felony that shall forever discharge him from prosecution, has been construed and interpreted by the legislature in the enactment of a statute, that "every person against whom an indictment is found charging a felony, and held in any court for trial, shall be forever discharged from prosecution for the offence, if there be three regular terms of the Circuit, or four of the County, Corporation, or Hustings court, in which the case is pending, after he is so held without a trial," unless the failure to try was due to certain causes mentioned in the statute. Section 4047, Code of Virginia. This, or a similar provision, has long been a part of the statute law of the State (Revised Code of 1819, Vol. 1, chap. 169, sec. 28; and Code of 1849, chap. 208, sec. 36), and this legislative interpretation of the Constitution has more than once received the sanction of this court. *Adcock's case*, 8 Gratt. 661; *Brown* v. *Eppes*, *ante*, p. 726; and *Nicholas* v. *Com.*, *ante*, p. 741.

The case was then continued on the motion of the prisoner

from time to time until the September term of the court. At this term he obtained leave of the court to withdraw his plea of not guilty, and in lieu thereof offered two pleas in bar of the prosecution against him, though styled pleas in abatement. They were demurred to by the attorney for the Commonwealth. The court sustained the demurrer, and rejected the pleas. They involve the same principle of defence, and may be considered together.

The first plea sets forth that, at the March term, 1893, of the County Court of Loudoun county, he was convicted on the indictment, and the following verdict rendered by the jury: "We, the jury, find the prisoner, D. W. Benton, guilty of *grand larceny* as charged in the within indictment, and fix his punishment at two years' confinement in the penitentiary," upon which verdict judgment was entered against him, but that it was afterwards reversed by this court and a new trial granted him.

The second plea sets forth that he was convicted at the November term, 1892, of the said court, and the following verdict rendered by the jury: "We, the jury, find the defendant, D. W. Benton, *guilty as charged in the within indictment*, and fix his punishment at two years' confinement in the penitentiary;" that judgment was entered thereon against him; and that such judgment was afterwards reversed by this court and a new trial awarded him.

It was contended and ably argued by his counsel that, the prisoner having been convicted at the March term, 1893, of *grand larceny only*, and the verdict being silent as to the charge of housebreaking with intent to commit larceny, he was thereby, in effect, acquitted of the offence of housebreaking with intent to commit larceny; and that the verdict at the November term, 1892, being *general* and silent as to the larceny charged, it was a verdict for housebreaking with intent to commit larceny *only*, and, in effect, an acquittal of the

charge of larceny; and consequently, that he had been acquitted of both the felonies charged and was not liable to be again put upon trial for either of the said offences, although at no time had a verdict of "not guilty" been rendered in his favor, but he had been convicted at separate times, and by different juries, of each of said offences.

These pleas present the important inquiry: Upon what charge or for what offence may an accused be tried, who has been convicted upon a single count, wherein more than one offence is distinctly or substantially charged, where the verdict of conviction has been set aside and a new trial granted him ?

The indictment in the case at bar contained only two counts.

The first was for breaking and entering in the night time the meat house of Mary Neville with intent to steal the goods and chattels of Robert Neville; and the second, for entering the said house in the night time without breaking with the intent aforesaid.   Each count also charged the actual larceny of a quantity of meat of Robert Neville in the said house of the value of $50.   There was no separate count for the larceny.

Housebreaking with the intent to commit larceny, and grand larceny are distinct offences under the law, and to each is affixed its own penalty, but they may be and often are one continued act, and may be charged in the same count of an indictment.   Upon such count the accused may be found guilty of either of the offences, but there can be only one penalty imposed.   *Com.* v. *Hope*, 22 Pick. 1; *Josslyn* v. *Com.*, 6 Metcalf, 236; and Bish. on Cr. Pr. Vol. 2, sec. 144. If it is desired to punish for both offences in a case of this kind, there must be inserted in the indictment a separate count for the larceny, as was done in *Speer's case*, 17 Gratt. 570. An acquittal, where there is but one count, is a bar to prosecution for all offences therein charged.   If there is a convic-

tion generally, and it is submitted to, this is also a bar to all such offences.   If there is a conviction for larceny only, and it is submitted to, this too is a bar to further prosecution for all the offences charged.   It is when the conviction is not submitted to, but a new trial is granted, that the difficulty arises.

When an accused is convicted of an offence, and applies for and obtains a new trial, he thereby waives his former jeopardy and subjects himself to further trial.   As a general principle, this cannot be questioned.   But to what extent does his waiver go ?   Where two distinct felonies are charged in the same count of an indictment, as here, is it limited to such one of the offences charged as to which he was convicted, or does it extend to the whole indictment and to both the felonies charged ?

Prior to the decision of *Stuart's case*, 28 Gratt. 950, the question here involved had not been the subject of legislation in Virginia, but the General Assembly, in the revision of the criminal laws soon thereafter, with the manifest purpose of changing the rule laid down in that case, added to section 36, of chapter 208, of the Code of 1849, the following: "But if the verdict be set aside on the motion of the accused, and a new trial awarded, on such new trial the accused shall be tried and such verdict may be found and sentence pronounced as if a former verdict had not been found."   Acts 1877-78, chapter 311, p. 279.   While that act was in force, William Briggs, was indicted in the County Court of Culpeper county for murder, and convicted of murder of the second degree.   Upon a writ of error to the Circuit Court of that county, the verdict was set aside and a new trial awarded. When the case came on to be tried anew, he offered a plea, in substance, that by the verdict on the former trial he had been acquitted of murder of the first degree, and could not be again tried for that offence.   The court rejected the plea,

and on the trial he moved the court to instruct the jury to the same effect, which the court refused to do. The case came before this court upon a writ of error which brought in review the statute aforesaid, and it was sustained as constitutional. *Briggs* v. *Commonwealth*, 82 Va. 554.

In the general revision of the civil and criminal laws made by the Code of 1887, the rule prescribed by the act of 1877-8, was modified, and this provision, "if the verdict be set aside, and a new trial granted the accused, he shall not be tried for any higher offence than that of which he was convicted on the last trial," was enacted in its stead. Sec. 4040, Code of 1887. This statute has now to be construed in respect to the case at bar. Any question as to its validity is settled by the authority of *Briggs* v. *Com.*, cited above.

What is meant by "higher offence" than that of which he was convicted at the last trial? What is to be the line of demarcation between offences so as to determine the offence or offences, of which the accused may be tried where a new trial is awarded? All offences are divided by law into two classes, felonies and misdemeanors. Between them, there is no trouble in applying the statute. It is between the various felonies themselves as a class that the difficulty arises in applying the rule of the statute. It is not easy in construing the statute to lay down an inflexible rule that will apply to all cases. As a general rule, however, it is to be determined by the maximum of the penalty affixed to the offence. Into some offence, some other element, besides the measure of the penalty, may perhaps enter and affect the distinction. If so, such case will be dealt with when it arises. The obvious intent of the statute is that the accused person should not, on a new trial, be subject to the risk of greater punishment than that with which the offence of which he was convicted on his last trial was punishable, but that he should remain liable to be convicted of any offence charged in the indictment for which

there was no severer penalty than for the offence of which he was convicted.

As a general rule then, the maximum of punishment must determine whether offences, when compared with each other, are of higher, lower, or of equal degree. The legislature, in passing the statute, had in mind no doubt such offences as murder, malicious shooting, &c., with intent to maim, &c., robbery, larceny, and the like, in which the grades of the offence are very distinct. Thus on an indictment for murder, the accused may be convicted of murder of the first degree, murder of the second degree, voluntary manslaughter, or involuntary manslaughter. And the legislature intended by the statute that a person indicted for murder and convicted of murder of the second degree should not, if granted a new trial, be again liable to conviction for murder of the first degree, for which death is the penalty, while the maximum punishment for murder of the second degree is confinement in the penitentiary for eighteen years; or, if convicted of voluntary manslaughter, for which the maximum punishment is confinement for five years in the penitentiary, should not again be put upon trial for either murder of the first or second degree; and that a person prosecuted for malicious shooting with intent to maim, &c., (under section 3671 of the Code), for which the highest punishment is confinement for ten years in the penitentiary, and convicted of unlawful shooting with such intent, for which the highest punishment is confinement for five years in the penitentiary, should not on a new trial be again tried for the higher offence of malicious shooting with the intent aforesaid, because that is higher, as measured by the severity of the penalty, than the offence of unlawful shooting with such intent; and that one indicted for grand larceny and convicted of petit larceny, if awarded a new trial, should not be again tried for grand larceny, for which the maximum penalty is ten years' confinement in the penitentiary, while

petit larceny is only a misdemeanor and punishable by confinement in jail, or by a fine, or by both. Other illustrations of criminal offences readily suggest themselves. Applying this rule to the case at bar, it will be seen that the offence of housebreaking in the night time with intent to commit larceny, and grand larceny are of equal degree. Both are felonies, and each is *punishable* with confinement for ten years in the penitentiary. That is the maximum punishment prescribed for each of said offences. The plaintiff in error was convicted on one trial for the offence of housebreaking with intent to commit larceny, and on the other for grand larceny, but both being of equal degree, upon applying for and obtaining a new trial on each occasion, he waived his jeopardy as to both, both being charged in the same count, and he was rightly put upon trial upon the whole indictment. The trial court, therefore, committed no error in sustaining the demurrer to the pleas and rejecting them.

His pleas being rejected by the court, he thereupon demurred to the indictment. The first ground of demurrer was based on the objection that its two counts were repugnant to each other, because the first count charged the accused with *breaking and entering* the meathouse of Mary Neville, and the second count charged him with entering it *without breaking*. The two counts are in the usual and approved form for the offence charged and the same which it is the constant practice to join in one indictment. It is entirely permissible to describe the offence committed in various ways in separate counts of the same indictment, so as to meet the evidence as it may be adduced on the trial. Bishop on Crim. Pro. Vol. 1, secs. 446 and 449; *Dowdy* v. *Commonwealth*, 9 Gratt. 727; and *Smith* v. *Commonwealth*, 21 Gratt. 809.

The other ground of demurrer was that the indictment did not charge the breaking and entering, or the entering without breaking, with intent to commit larceny, any house speci-

fied in the statute since its amendment. The statute before it was amended, after specifying certain houses, as "shop, office, storehouse, warehouse, and bankinghouse," used the words "or other house," (sections 3705 and 3706 of the Code), but in the amendment, (Acts 1893-'94, page 228) the words "or other house" were omitted. It was, therefore, claimed that *meathouse* is not embraced within the description of any of the houses specified, and that the breaking or entering such house with the intent to commit larceny is not now a criminal offence. The word "storehouse" remains in the statute as amended and is defined to be "a building for keeping goods of any kind, especially provisions." A meathouse, as popularly understood, is a building in which meat is stored and kept. It is by its very definition a storehouse and synonymous with it. And while it is better, as has frequently been said by this court, to describe an offence in the very words of the statute, yet it will be sufficient to do so in any other words that are synonymous, and which plainly bring the case within the statute, except where certain technical words are necessary to be used in an indictment in charging particular offences. *Howel's case*, 5 Gratt. 664; *Young's case*, 15 Gratt. 664; *Taylor's case*, 20 Gratt. 825; and *Dull's case*, 25 Gratt. 965. The demurrer to the indictment·was therefore properly overruled.

The prisoner was then rearraigned, pleaded not guilty, and was put upon his trial. Exception was taken by him to the charge given by the court to the jury, and it is the subject of the fifth bill of exception. The basis of this exception is the same as that on which the two pleas disposed of above were founded, and it is also that of the several bills of exception taken to the admission of certain evidence on the trial.

This ground of defence having been disposed of adversely to the prisoner in the consideration of the pleas, these exceptions fall with it, and need not be further noticed.

The last assignment of error to be noticed is the claim that the record does not show that the prisoner was personally present in court when his case was continued on the 24th day of September, 1894, to a later day of that term of the court. The statement of the record, which is relied on for this claim of error, is as follows: "Case called and continued for defendant, by counsel, until Monday next, 1st Octo. 1894." But this is not all that the record discloses. On the same day, and immediately following the above, is the statement that *"on motion of the defendant* rules *was* awarded him against" certain named persons (who were no doubt his witnesses) to show cause why they should not be fined for their failure to appear that day before the court in obedience to summons previously executed on them. The order of the court is apparently all one, and made at the same time, and the necessary inference from it is that the prisoner was personally present in court when the motion was made by his counsel and the case continued. As was said by the court in *Lawrence's case*, 30 Gratt. 851: "He had a right, of course, to appear by attorney, and the fact that he so appeared does not show that he was not then personally present in court, and if it otherwise appears from the record that he was then personally present, it will be sufficient." The whole record may be looked to, and if anything appears in it from which his presence must be necessarily inferred, it is all that the law requires. *Lawrence's case, supra; Sperry's case,* 9 Leigh, 623; *Cluverius' case,* 81 Va. 787; Bishop on Cr. Prac. Vol. 1, sec. 1353. So, if it were conceded, which we do not, that it is necessary that one indicted for a felony should be personally present in court when a motion is made by his counsel for a continuance of the case, and that the record should show this, the record here, if it does not expressly affirm the fact of the personal presence in court of the accused when his

case was continued, clearly negatives the claim that he was not present; and this assignment of error is not sustained.

We find no error in the judgment of the Circuit Court of Fauquier county, and it must be affirmed.

AFFIRMED.