# Wytheville.

## Ashlock v. Commonwealth.

### June 11, 1908.

1. CRIMINAL LAW—*Erroneous Continuance.*—Erroneously continuing a criminal case furnishes no ground for reversing a judgment of conviction rendered against the accused at a subsequent term.

2. VENIRE FACIAS—*Irregularities—Motion After Verdict.*—Under the express terms of 4018 of the Code (1904) objections to a writ of *venire facias* on account of irregularity in drawing the names of persons to serve, come too late after verdict.

3. VENIRE FACIAS—*Drawing Names—Deputy Clerk as Commissioner in Chancery—Failure to List Name Drawn.*—The commissioner in chancery in whose presence the jurors in a criminal case may be drawn in the absence of the judge, should not be the deputy of the clerk who draws them, nor has the clerk the right to leave off the list of persons drawn by him the name of any person drawn who is not embraced within the classes designated by section 4018 of the Code. If any person whose name is drawn from the box is, for any other cause, not a competent person to sit on the jury, that is a question for the court and not for the clerk.

4. EVIDENCE—*Letters—Evidence of Authenticity—Internal Evidence.*—A letter not shown to be in the handwriting of the party to be affected by it may sometimes be looked into for internal evidence of authenticity, and such internal evidence may be sufficient to justify the court in permitting the letter to go to the jury, but the general rule is that the mere contents of a letter purporting to be that of a particular person are not of themselves sufficient evidence of its genuineness. The best evidence rule would generally require proof of the genuineness of the signature.

Error to a judgment of the Circuit Court of the city of Williamsburg. Indictment for murder. Defendant assigns error to a judgment of conviction of murder of the first degree.

*Reversed.*

The opinion states the case.

*Armistead & Armistead,* for the plaintiff in error.

*Attorney General Wm. A. Anderson,* for the Commonwealth.

Buchanan, J., delivered the opinion of the court.

The first error assigned is to the action of the court in continuing the case at the June term, 1907, of the court.

So far as the record shows, this action of the court was not excepted to, and if it had been, even if the court had erred, the mere continuance of the case did not entitle the accused to be discharged from further prosecution, and would furnish no ground for reversing the judgment complained of. *Benton's Case,* 91 Va. 782, 21 S. E. 495.

The refusal of the court to quash the writ of *venire facias* is assigned as error. One of the objections relied on is that the order of the judge directing the clerk to summon forty persons for the trial of the accused was not entered of record.

This objection is based on a mistake of fact. The order is copied into the transcript for the writ of error, and the clerk certifies that it is a true transcript from the records of the court.

The other objections to the writ of *venire facias* were made after verdict and furnish no ground for setting aside the verdict or granting a new trial. Sec. 4018 of the Code, as amended by act approved February 10, 1904, Acts 1904, pp. 15-17. It may not be improper, however, to say with reference to these objections, that as the names of the persons to be summoned as jurors under the provisions of section 4018 of the Code, as amended, may be drawn either by the clerk of the court or his deputy, it was not intended that the commissioner in chancery, in whose presence the jurors may be drawn in the absence of the judge, should be the deputy of the clerk. It seems pretty clear from that section and section 3146, although not ex-

pressly prohibited, that the court should designate a commissioner who is not a deputy of the clerk. The clerk in making up a list of the persons whose names have been drawn from the box has no right to leave off the list the name of any person not embraced within the classes designated by section 4018 of the Code. If any person whose name is drawn from the box is, for any other cause, not a competent person to sit on the jury, that is a question for the court and not for the clerk.

The court permitted certain letters to go to the jury, which were objected to on the ground that it was not shown that they were written by the accused, or that he authorized any other person to write them. To one of these letters was attached the name of the accused. The others were unsigned.

Although it appeared in evidence that the accused could write, there was no proof introduced to show that either the body of the letters or the signature was in the handwriting of the accused. The ground upon which they seem to have been admitted was that two of them were found between the blankets of the bed in which the accused slept, in the cell of the jail in which he was confined, and that one of the letters directed the persons to whom it was written where the third could be found, and that it was found in the place indicated.

It is true that a letter not shown to be in the handwriting of the party to be affected by it may sometimes be looked into for internal evidence of the source from which it came, and that such internal evidence may be sufficient to justify the court in permitting the letter to go to the jury; but the general rule is that the mere contents of a letter purporting to be that of a particular person are not of themselves sufficient evidence of its genuineness.

In discussing this question, Mr. Wigmore, in sec. 2148 of his work on Evidence, says: "If Doe is the sole person who knows the circumstances of a certain event, and if a letter arrives purporting to be from Doe, and stating those circumstances, and the statement appears by subsequent developments

to be accurate, it would be a simple matter for the law, as well as for common sense, to deem that sufficient evidence (ante ss. 171) of Doe's authorship had been furnished. But as there can seldom be a sole person knowing the circumstances of events, and as it could seldom be proved (if it were the case) that no other person had the knowledge, it is obvious that there are here multiple opportunities for a different authorship. Moreover, the other persons knowing the same facts are often persons hostilely interested, who thus have a motive for fabrication; and if it were once laid down as a general rule of law that the contents of a letter might be taken as evidencing its authenticity, too many would be found to take fraudulent advantage of it. It is true that in the vast majority of transactions of every-day life, persons do act upon just such evidence of authenticity and no more; and it might be supposed that the law would follow this practice. But in the first place, it is true that frauds are constantly perpetrated in this very manner (as obtaining goods by forging the name and letter-heads of reputable merchants) ; and, secondly, there is little necessity for relying upon such evidence, in view of the ample opportunities of proof afforded by witnesses to handwriting. Accordingly, it seems generally conceded that *the mere contents of a written communication,* purporting to be a particular person's, are of themselves not sufficient evidence of genuineness.

"But where the necessity above mentioned does in fact exist, namely, the impossibility of obtaining handwriting testimony, it would seem to follow that resort must be had to the evidence from contents. Such impossibility may exist for three sorts of writing; (a) an illiterate's writing by amanuensis; (b) a type-written letter; (c) printed matter."

The general rule and the exception to it upon this question, as stated by Mr. Wigmore, seem to us reasonable, of easy application, in accord with the general principle that in establishing any fact the best evidence of it should be furnished, and is sustained by the weight of authority, so far as we can ascertain,

though there does not seem to be many cases upon the subject. See *Freeman* v. *Brewster,* 93 Ga. 648, 21 S. E. 165 ; *Smith* v. *Easton,* 59 Md. 138, 39 Am. Rep. 355 ; *In re Deep River Nat. Bank,* 73 Conn. 341, 47 Atl. 675 ; *Nicholas* v. *Kingdom Iron, &c. Co.,* 56 N. Y. 618 ; 17 Cyc. 409-411.

Applying these principles to the facts of this case, it is clear that no proper foundation was laid for the introduction of the letters in question and that the court erred in admitting them in evidence.

For this error, its judgment must be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*