Syllabus.

### Staunton.

### PINE AND SCOTT V. COMMONWEALTH.

#### September 20, 1917.

1. CRIMINAL LAW—*Indictment and Information—Constitutionality of Statute—Appeal and Error—Point Raised for . the First Time on Appeal.*—Every indictment is based upon the existence of a valid law annexing a penalty to the offense charged. If that law is unconstitutional, it is void. It is no law at all, and there is no penalty to inflict. So soon, therefore, as this fact is brought to the attention of the court in any way, whether by demurrer, plea, motion or otherwise, the case is at once dismissed, as there is no offense to be punished. It need not be specially pleaded. This rule applies to the appellate court as well as the trial court, although the point is made in the appellate court for the first time.

2. CONSTITUTIONAL LAW—*Construction—Expressio Unius—Exclusio Alterius.*—The maxim, *expressio unius est exclusio alterius*, though often of importance and value, is not of universal application, even in the interpretation of State Constitutions. They are the fundamental, permanent law of the land, providing for the future as well as the present, and should carry out the principles of government as gathered from the instrument when read as a whole. The application of arbitrary rules of construction will be resorted to with hesitation, especially when it would bring about results contrary to the declared public policy of the State, and hamper the legislature in amply providing for the health, morals, safety and welfare of the people. Only those things expressed in such positive affirmative terms as plainly imply the negative of what is not mentioned, in view of the known policy of the State, will be considered as prohibiting the powers of the legislature. The principle of the maxim should be applied with great caution to those provsions of the Constitution which relate to the legislative department, and the exclusion should not be made unless it appears to be a plainly necessary result of the language used.

3. CONSTITUTIONAL LAW—*Construction—Constitution not a Grant of Power, but a Restriction upon the Power of the Legislature.*— In determining whether an act of the legislature is forbidden by the State Constitution, it must be borne in mind that the Constitution is not a grant of power, but a restriction upon an otherwise practically unlimited power; that the Constitution is to be looked to, not to ascertain whether a power has been conferred, but whether it has been taken away; that the legislature is practically *omnipotent* in the matter of legislation, except in so far as it is restrained by the Constitution, expressly or by plain, or (as some of the cases express it) by necessary, implication.

4. CONSTITUTIONAL LAW—*Construction—Presumption in Favor of Act.*—The mere enactment of a law is a legislative declaration of the necessary constitutional power, which is entitled to great respect from a co-ordinate department of the government; every act is presumed to be constitutional until the contrary is made plainly to appear, and all doubts on the subject are to be solved in favor of its validity.

5. INTOXICATING LIQUORS—*Constitutional Law—Power of Legislature as to Regulations in Regard to Intoxicating Liquors.*— In this State, from the earliest date to the adoption of the present Constitution, the legislature has exercised uncontrolled power over the manufacture and sale of intoxicating liquors, and since local option and dispensary laws have come into vogue, has exercised undisputed authority and control over these subjects also, and it would require very plain language in a constitutional provision to indicate that it was the purpose of the constitutional convention to take away from the legislature a power exercised by the legislatures of the other States of the Union, and one that has been within the province of the legislature of this State from the earliest date.

6. CONSTITUTIONAL LAW—*Classification of Constitutional Provisions—Mandatory, Prohibitive and Permissive or Declaratory.*— The constitutional provisions relating to the legislative department have been classified as mandatory and prohibitive. The oaths of the legislators bind them to the performance of the one, and the courts restrain them from the performance of the other, if they should overstep the limits set. As to all other powers they are free to act as their judgments dictate. In the main this classification is correct, but Constitutions sometimes contain other provisions relating to or affecting the legislative department, which may be classified as either permissive or declaratory.

7. CONSTITUTIONAL LAW—*Classification of Constitutional Provisions—Mandatory, Prohibitive and Permissive or Declaratory.*— When the Constitution has fully dealt with a subject and covered the entire ground, the legislature would be powerless to make any change in it, unless specially authorized to do so, and it may be desirable to confer such authority. In such case the authority is conferred by a permissive grant in the Constitution. In other cases the constitutional provision is only declaratory of the existing law, and there may or may not be annexed to it a prohibitory provision.

8. CONSTITUTIONAL LAW — *Construction — Presumption as to the Meaning of Words and Phrases.*—The presumption is that the same meaning attaches to a given word or phrase which is repeated in a Constitution, unless the contrary is made to appear, and hence the whole instrument should be examined to ascertain what that meaning is.

9. INTOXICATING LIQUORS—*Constitutional Law—Construction of Section 62, Constitution of 1902.*—By section 62, of the Constitution of 1902, it is provided that: "The General Assembly shall have full power to enact local option or dispensary laws, or any other laws, controlling, regulating or prohibiting the manufacture or sale of intoxicating liquors." This section does not authorize the enactment of a single law the legislature might not have enacted if the section had not been adopted. It is simply declaratory of the existing law, but thereby inviting attention to the subject. Complete authority over the whole subject of intoxicating liquors has not been taken away from the legislature by an express provision, nor by necessary implication, and the maxim *expressio unius est exclusio alterius* does not apply.

10. CONSTITUTIONAL LAW—*Construction—Expediency—Mapp Act.*— The Supreme Court of Appeals is of opinion that the purpose of the act is a wise one, but even if it were of a different opinion, it could make no difference in the result so long as it is within the legislative power, for judicial opinions of expediency cannot be substituted for the will of the legislature when constitutionally expressed.

11. CONSTITUTIONAL LAW—*Mapp Act—Section 62, Constitution of 1902.*—The provisions of the act of Assembly approved March 10, 1916 (Acts 1916, page 215), commonly known as the prohibition act, so far as called in question in this case, are not forbidden by section 62 of the Constitution of this State.

12. INTOXICATING LIQUORS—*Indictment and Information—Charging More than One Offense in a Single Count.*—Section 7, Acts 1916, page 215, prescribing a form of indictment under the prohibi-

tion act, which shall be sufficient, in effect declares that more than one offense arising under the statute may be charged in a single count. The power of the legislature to change rules of procedure is unquestionable, except as restrained by the Constitution, and there is no good reason why it may not provide that what has heretofore required several counts in an indictment may now be accomplished by a single count, provided the prisoner is not unlawfully prejudiced thereby. If the prisoner is not prejudiced, it is a matter of mere procedure and clearly within the province of the legislature. The prisoner is not so prejudiced if he is fully put upon notice of the cause and nature of the offense with which he is charged, and is afforded ample opportunity to make his defense.

13. INTOXICATING LIQUORS—*Indictment and Information—Charging More than One Offense in a Single Count.*—In the absence of statutory regulation, while any number of misdemeanors of the same nature and punishable in the same manner may be charged in the same indictment, there must be a separate count for each offense, and a defendant cannot be convicted of more offenses than there are counts, and it follows that the defendant cannot lawfully be charged with more than one offense in a single count.

14 INDICTMENT AND INFORMATION—*Requisites and Sufficiency.*—In all cases, civil as well as criminal, a person hailed into court has the right to demand that he be told in plain, intelligible language what is the cause of the complaint against him; and this right, in so far as it relates to crimes, is guaranteed by both the federal and State Constitutions.

15. INDICTMENT AND INFORMATION — *Requisites and Sufficiency — Cause and Nature of Accusation—Prohibition Act—Sufficiency of Statutory Form.*—An indictment following the statutory form, as set out in section 7 of the prohibition act, Acts 1916, page 215, undertaking to charge the defendant with all of the first offenses under sections 3, 4 and 5 of the act, does not fully inform the defendant "with clearness and certainty" of the "cause and nature of his accusation."

16. INDICTMENT AND INFORMATION — *Requisites and Sufficiency — Legal Conclusions.*—Ordinarily, the acts done should be charged, in order to give the defendant the necessary information. It is the function of an indictment to charge facts and not legal conclusions.

17. INDICTMENT AND INFORMATION—*Criminal Law—Constitutional Law—Cause and Nature of Accusation—Waiver of Right.*—While the Constitution guarantees to every man the right to demand "the cause and nature of his accusation," it does not

prescribe the manner in which this demand shall be complied with. It does not require that it shall be by indictment, or in any other prescribed manner. It may be by presentment or information, or in any other manner the legislature may provide. Furthermore, the right guaranteed by the Constitution is the right to demand "the cause and nature of his accusation." If he does not choose to demand it, he is under no obligation to do so. It is a right that he may waive if he chooses, and which he will be held to have waived unless he asserts it.

18. BILL OF PARTICULARS—*Right to Demand—Civil and Criminal Cases.*—The right to call for, and the duty to furnish, a bill of particulars in civil cases is of frequent application, and is regulated by section 3249 of the Code. The statute confers the right "in any action or motion," and declares how it may be enforced. Apparently, this statute was not intended to apply to a criminal prosecution, but the right is inherent in the trial court in the orderly administration of justice, to prevent wrong and injustice to persons who are presumed to be innocent, and to assure to them their constitutional rights. The indictment, of course, must charge the offense, and if it fails to give the information necessary to enable the defendant to concert his defense, such information may be supplied by a bill of particulars; but if the offense is not charged in the indictment, the defect cannot be supplied by a bill of particulars.

19. INDICTMENT AND INFORMATION—*More Offenses than there are Counts in the Indictment—Election.*—Except in the single case of an indictment under the prohibition law, the law of this State is that there cannot be more offenses than there are counts in the indictment, and, if the Commonwealth offers evidence of more than one, the proper practice is for the defendant to ask the court to compel the Commonwealth to elect for which one it will prosecute.

20. APPEAL AND ERROR—*Criminal Law—Constitutional Law.*—A denial of a constitutional right is, of itself, reversible error.

21. INDICTMENT AND INFORMATION—*More than One Offense Charged in Indictment—Compelling Prisoner to go to Trial on All.*— If more than one offense has been charged in the indictment, the prisoner will not be compelled to go to trial on all, where it is made to appear that they are so separated by time and circumstance that it would confuse and disconcert him in preparation for the trial, or the jury in consideration of the case.

22. INDICTMENT AND INFORMATION—*More than One Offense Charged in a Count—Remedy.*—Each count, in theory at least, is for a separate and distinct offense, while, in fact, it may be but one offense so charged as to meet the different phases of the evi-

dence as it may appear on the trial. It would seem, therefore, that the objection to the charge of more than one offense in the same indictment cannot, as a rule, be raised by demurrer. Neither can it be raised by motion in arrest of judgment, for the fact of difference in the offenses charged would not appear of record. The proper method seems to be by motion to quash, though the Commonwealth might be required to elect on which one it would proceed.

23. INDICTMENT AND INFORMATION—*Charging Two or more Offenses in the Same Indictment.*—There is no reason on principle why even two felonies of the same nature and punishable in the same manner may not be charged in different counts of the same indictment.

24. INDICTMENT AND INFORMATION—*Election Between Counts.*—Inasmuch as Acts 1916, chapter 146, section 7, permits more than one offense to be charged in a single count, the defendant has not the absolute right to demand of the attorney for the Commonwealth that he should elect for which of the several offenses he would prosecute. He might desire to prosecute for more than one. It is a matter resting in the sound discretion of the trial court whether or not an election should be compelled.

25. CRIMINAL LAW—*Election Between Counts.*—While the Commonwealth must be permitted to charge an offense in various ways to meet the evidence as it may be adduced on the trial, if, by reason of charging several distinct offenses widely separated by time, place and circumstances, the defendant will be seriously embarrassed in making his defense, whether the offense be felony or misdemeanor, an election should be compelled.

26. CONSTITUTIONAL LAW—*Construction—Statute Adopted from Another State—Constitutionality.*—While the interpretation by the highest court of a State from which a statute is taken will be followed, the legislature cannot, by enacting a statute which has been held constitutional and valid by the highest court of another State, deprive the courts of this State of the right to determine for themselves the constitutionality of such statute.

27. INTOXICATING LIQUORS—*Evidence—Admissibility.*—On the trial of the violation of the prohibition act, two witnesses testified that they had bought liquor from the defendants, and that they also bought liquor from one T. The defendants offered T. as a witness, and proved by him that the prosecuting witnesses had not bought any liquor from him. The defendants then offered to prove by T. that the prosecuting witnesses broke open his house, broke into his trunk and took out a gallon of whiskey.

*Held:* That the latter evidence was irrelevant.

28. INTOXICATING LIQUORS—*Prohibition Law—Possession as Prima Facie Evidence.*—Section 55 of the prohibition act, Acts 1916, page 215, declaring that possession of certain quantities of liquor should be *prima facie* evidence that the one in possession had the same for sale, makes no distinction as to the time of the acquisition of the liquor, whether before or after November 1, 1916.

29. CONSTITUTIONAL LAW—*Power of Legislature—Rules of Evidence.*—Section 55 of the prohibition act, Acts 1916, page 215, declaring that the possession of certain quantities of liquor shall be *prima facie* evidence of a purpose of sale, merely establishes a rule of evidence; and that such rules may be established by the legislature is well settled.

30. INTOXICATING LIQUORS—*Instructions—Instructions Read in Light of the Evidence.*—In a prosecution under the prohibition act the jury were instructed, amongst other things, that if they believed that the defendants kept or stored ardent spirits for sale or *to give away* they would be as guilty as if they had actually sold or given away ardent spirits. Although under different circumstances this instruction would be misleading, if not erroneous, as the act allows gifts in one's own home, but as instructions must be read in the light of the evidence offered on the trial, and in the instant case the evidence was of a sale and not of a gift, and at a restaurant and not in a home, the instruction could not have misled the jury.

31. INSTRUCTIONS—*Refusal of Instruction Covered by One Given—Intoxicating Liquors.*—Where in a prosecution under the prohibition act the court instructed the jury as follows: "The court instructs the jury that if they believe from the evidence that the defendants purchased the liquor prior to November 1, 1916, and had it for their own use and not to sell and did not sell the same, they should find them not guilty," it is not error to refuse, at the request of defendants, the following instruction: "The court instructs the jury that if they believe from the evidence that the defendants had the liquor in their possession prior to November 1, 1916, at which time the present liquor law came into effect, then such possession creates no presumption against them." If the second instruction be conceded to be a correct statement of the law, defendants could not have been injured by its refusal, as the first instruction, given at their instance, stated the law as favorably to them as they were entitled to.

32. INSTRUCTIONS—*Refusal of Instruction Covered by One Given—Intoxicating Liquors.*—In a prosecution under the prohibition act, defendants requested the court to instruct the jury that

notwithstanding the fact that possession of more than one gallon of liquor constitutes *prima facie* evidence of guilt, still, if the evidence shows that the liquor was purchased before November 1, 1916, and stored away by the defendants for their own use, then the *prima facie* evidence is overcome and the Commonwealth must prove by clear, distinct and reliable evidence that the defendants had the liquor for the illegal purpose mentioned in the indictment.

*Held:* If there was any error in refusing this instruction, it was harmless, as the court had already given, at the instance of the defendants, the following instruction which sufficiently protected their rights: "The court instructs the jury that notwithstanding the fact that possession of more than one gallon of liquor constitutes *prima facie* evidence of guilt, still if you believe from the evidence that the liquor was purchased before November 1, 1916, and stored away by the defendants for their own use, you should find them not guilty."

33. INTOXICATING LIQUORS—*Prohibition Act—Possession of More than One Gallon of Liquor.*—The prohibition act does not make it unlawful for a person to keep in his home for his personal use an amount of distilled liquor in excess of one gallon, if the possession was lawfully acquired. The act simply declares what the presumption shall be from such possession, and by the terms of the act the presumption is merely *prima facie* and may be rebutted.

Error to a judgment of the Corporation Court of the city of Roanoke.

*Affirmed.*

The opinion states the case.

*Hoge & Darnall, Lawson Worrell* and *A. J. Oliver,* for the plaintiffs in error.

*Attorney-General Jno. Garland Pollard, Assistant Attorney-General Leslie C. Garnett* and *Leon M. Bazile,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

The plaintiffs in error were indicted, tried and convicted under the prohibition act (Acts 1916, p. 215). The indictment was framed under section 7 of the act, which, so far as necessary to be quoted, is in the following words:

"Sec. 7. While any good and sufficient indictment may be used, an indictment for any first offense under sections three, four and five, of this act, shall be sufficient if substantially in the form or to the effect following:

" 'State of Virginia,

" 'County of ........... to-wit:

" 'In the circuit court of............county:

" 'The grand jurors in and for the body of said county of ........... and now attending said court at its ....
..term, nineteen ......, upon their oaths, do present that ...... within one year next prior to the finding of this indictment, in the said county of ......, did unlawfully manufacture, sell, offer, keep, store and expose for sale, give away, dispense, solicit, advertise and receive orders for ardent spirits, against the peace and dignity of the Commonwealth of Virginia.' "

The indictment contains but one count, and that is in the language of the statute. The defendant demurred to the indictment, but their demurrer was overruled, and this action of the court is assigned as error. The demurrer raised the question of the constitutionality of the act. One of the grounds of unconstitutionality is that it violates section 62 of the Constitution, hereinafter quoted. There is nothing in the record to indicate that this objection was made in the trial court. It was not made in the petition for the writ of error, nor referred to in the brief for the Commonwealth, but was made for the first time in the reply brief for plaintiffs in error. This, however, is immaterial. Every indictment is based upon the existence of a valid law annexing a penalty to the offense charged. If

that law is unconstitutional, it is void. It is no law at all, and there is no penalty to inflict. So soon, therefore, as this fact is brought to the attention of the court in any way, whether by demurrer, pleas, motion, or otherwise, the case is at once dismissed, as there is no offense to be punished. It need not be specially pleaded. This rule applies to the appellate court as well as the trial court, although the point is made in the appellate court for the first time. *Adkins* v. *City of Richmond,* 98 Va. 91, 34 S. E. 967, 47 L. R. A. 583, 81 Am. St. Rep. 705, and cases cited.

The constitutionality of the act is challenged on the ground that the whole legislative power over intoxicating liquors is declared by section 62 of the Constitution, and that under the rule, *expressio unius est exclusio alterius,* the granting of certain powers is the exclusion of all others. What powers the legislature has exercised which have not been granted have not been pointed out. The clause of the Constitution referred to is as follows:

"The General Assembly shall have full power to enact local option or dispensary laws, or any other laws, controlling, regulating, or prohibiting the manufacture or sale of intoxicating liquors."

The maxim, *expressio unius est exclusio alterius,* though often of importance and value, is not of universal application, even in the interpretation of State Constitutions. They are the fundamental, permanent law of the land, providing for the future as well as the present, and should carry out the principles of government as gathered from the instrument when read as a whole. The application of arbitrary rules of construction will be resorted to with hesitation, especially when it would bring about results contrary to the declared public policy of the State, and hamper the legislature in amply providing for the health, morals, safety and welfare of the people. Only those things expressed in such positive affirmative terms as plainly imply the nega-

tive of what is not mentioned, in view of the known policy of the State, will be considered as prohibiting the powers of the legislature. The principle of the maxim should be applied with great caution to those provisions of the Constitution which relate to the legislative department, and the exclusion should not be made unless it appears to be a plainly necessary result of the language used. *Schubel* v. *Olcott,* 60 Ore. 503, 120 Pac. 375; *State* v. *Martin,* 60 Ark. 343, 30 S. W. 421, 28 L. R. A. 153; *Sumpter* v. *Duffie,* 80 Ark. 369, 97 N. W. 435; *State* v. *Bryan,* 50 Fla. 293, 39 So. 929.

In determining whether an act of the legislature is forbidden by the State Constitution, it must be borne in mind that the Constitution is not a grant of power, but a restriction upon an otherwise practically unlimited power; that the Constitution is to be looked to, not to ascertain whether a power has been conferred, but whether it has been taken away; that the legislature is practically omnipotent in the matter of legislation, except in so far as it is restrained by the Constitution, expressly or by plain, or (as some of the cases express it) by necessary, implications; that the mere enactment of a law is a legislative declaration of the necessary constitutional power, which is entitled to great respect from a co-ordinate department of the government; that every act is presumed to be constitutional until the contrary is made plainly to appear, and that all doubts on the subject are to be solved in favor of its validity. These principles and these presumptions are not of mere local application, but are common to practically all of the States. Authority is so abundant as to be easily found, and it would unnecessarily burden this opinion to do more than cite a few of the late cases by way of illustration. *Button* v. *State Corporation Commission,* 105 Va. 634, 54 S. E. 769; *Henry's Case,* 110 Va. 879, 65 S. E. 570, 26 L. R. A. (N. S.) 883; *McGrew* v. *Mo. Pac. R. Co.,* 230 Mo. 496, 132

S. W. 1076; *Butler* v. *Board, etc.,* 99 Ark. 100, 137 S. W. 251; *People* v. *Prendergast,* 202 N. Y. 188, 95 N. E. 715; *Imp. Irr. Co.* v. *Jayne,* 104 Tex. 395, 138 S. W. 575, Ann. Cas. 1914 B, 322; *Scown* v. *Czarnecki,* 264 Ill. 305, 106 N. E. 276, L. R. A. 1915 B, 247, Ann. Cas. 1915 A, 772; *State* v. *Patterson,* 181 Ind. 660, 105 N. E. 228; *Eckerson* v. *Des Moines,* 137 Iowa 452, 115 N. W. 177; *Bullitt* v. *Sturgeon,* 127 Ky. 332, 105 S. W. 468, 14 L. R. A. (N. S.) 268; *Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462.

On no subject have the legislatures been given a freer hand than in dealing with intoxicating liquors. It has been so far regarded as an enemy of mankind that the most drastic legislation to suppress its use by the public has been upheld by the courts. We cite a few cases simply as illustrations: *Mugler* v. *Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; *Purity Extract Co.* v. *Lynch,* 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184; *James Clark Distilling Co.* v. *Western Mo. R. Co.,* 242 U. S. 311, 37 Sup. Ct. 180, 61 L. Ed. 326, L. R. A. 1917 B, 1218; *Express Co.* v. *Whittle,* 194 Ala. 406, 69 So. 652, L. R. A. 1916 C, 278; *Delaney* v. *Plunkett* (Ga.) 91 S. E. 561; *State* v. *Phillips,* 109 Miss. 22, 67 So. 651, L. R. A. 1915 D, 530; *Glenn* v. *Southern Express Co.,* 170 N. C. 286, 87 S. E. 136. For collection of cases, see 17 Am. & Eng. Ency. Law (2d ed.) 207, *et seq.*

In this State, from the earliest date to the adoption of the present Constitution, the legislature has exercised uncontrolled power over the manufacture and sale of intoxicating liquors, and since local option and dispensary laws have come into vogue, has exercised undisputed authority and control over these subjects also. In view of these facts, it would require very plain language to convince us that it was the purpose of the constitutional convention to take away from the legislature of this State a power exercised by the legislatures of the other States of the Union,

and one that has been within the province of the legislature of this State from the earliest date.

The constitutional provisions relating to the legislative department have been classified as mandatory and prohibitive. The oaths of the legislators bind them to the performance of the one, and the courts restrain them from the performance of the other, if they should overstep the limits set. As to all other powers they are free to act as their judgments dictate.

"In the partition of power between the three departments of government, the power of making laws is conferred on the General Assembly; some laws they are compelled by mandate to make; other laws they are forbidden to make; these are the only limits to their powers; all subjects of legislation not affected by mandate, nor by prohibition, are within the discretion of the General Assembly." *Commonwealth* v. *Drewry*, 15 Gratt. (56 Va.) 1, 5.

As the legislature has all legislative power not taken away by the Constitution, it would seem that the classification into mandatory and prohibitive provisions was in the main correct. Constitutions, however, sometimes contain other provisions relating to or affecting the legislative department, which may be classified as either permissive or declaratory. This is especially true of modern Constitutions which enter into greater detail and more nearly approximate legislation than formerly. Indeed, some of their provisions are purely legislative in character. When the Constitution has fully dealt with a subject and covered the entire ground, the legislature would be powerless to make any change in it, unless specially authorized to do so, and it may be desirable to confer such authority. In such case the authority is conferred by a permissive grant in the Constitution. *McGurdy* v. *Smith*, 107 Va. 757, 60 S. E. 78; Constitution 1902, secs. 89, 95, 100, 101. In other cases the constitutional provision is only declaratory of the

existing law, and there may or may not be annexed to it a prohibitory provision. For example, section 47 declared that, "Each house shall judge of the election, qualification, and returns of its members; may punish them for disorderly behavior, and, with the concurrence of two-thirds, expel a member." There is no grant of power here that did not exist before, nor does the declaration of the power inhibit the house from exercising other powers, such as the suspension of a member, or the imposition of a penalty for neglect of duty, but he cannot be expelled by less than a two-thirds vote. Again, that portion of section 175 of the Constitution which declares, "but the General Assembly may, from time to time, define and determine such natural beds, rocks or shoals, by surveys or otherwise," conferred no power on the General Assembly which it did not possess before, but is simply declaratory of the existing law.

The presumption is that the same meaning attaches to a given word or phrase which is repeated in a Constitution, unless the contrary is made to appear, and hence the whole instrument should be examined to ascertain what that meaning is. *Green* v. *Weller,* 32 Miss. 650. There are but four sections of the Constitution containing the phrase "The General Assembly shall have power." These are sections 100, 101, 62 and 84. The first two plainly belong to the class of *permissive* provisions, and were necessary to enable the legislature to act on the subject at all. The convention had dealt fully with the whole subject of courts, and marked out a complete system, and if this was to be changed in any way, it was necessary for the Constitution to provide that, "The General Assembly shall have power" to make the change. Hence, the provisions permitting the legislature to establish courts of land registration, and to confer certain jurisdiction upon clerks of circuit courts. Section 86, however, is purely declaratory of the existing

104

law, and conferred upon the legislature no power not previously possessed by it. That section declares, "The General Assembly shall have power to establish and maintain a Bureau of Labor and Statistics, under such regulations as may be prescribed by law." The word "bureau" means, "A subordinate department, or a division of a principal department;" "A department or force of men transacting a particular branch of public business." Standard Dict., Bouvier's Law Dict.; *Button* v. *State Corp. Com.*, 105 Va. 634, 639-40, 54 S. E. 769. These definitions show that the word "bureau" is used to express the same idea as that commonly expressed in the legislation of this State by the word "board," as for example, the "board of education." If the maxim, *expressio unius est excusio alterius*, be applied to this section, then the power conferred to establish a "Bureau of Labor" excludes the idea of any other bureau, and the legislature would be powerless to establish a bureau of charities and corrections, a bureau of fisheries, a bureau of game, a legislative bureau, a bureau of printing, or of highways, and probably of education; and, indee, of any other subjects. Yet all of these bureaus or boards have been established long ago, and during the fifteen years the Constitution has been in operation, there has not been even an intimation that the legislature did not have power to establish them. The conclusion is almost irresistible that no objection has been raised simply because there was no foundation for it. The section is clearly simply declaratory of the existing law.

The only remaining section containing the phrase, "The General Assembly shall have power" is section 62. It differs slightly, but significantly, from the phrase contained in the other sections. In order to avoid the idea of a limitation to any extent whatever on the legislative power, it declares that the General Assembly shall have *full* power. No new power whatever is conferred upon the legislature.

It does not authorize the enactment of a single law the legislature might not have enacted if the section had not been adopted. It is simply declaratory of the existing law, but thereby inviting attention to the subject. At the time of its adoption there had been no abatement in the zeal of temperance advocates, and there is nothing to indicate an intention on the part of the State to release its power over the whole subject of intoxicating liquor. It is not to be presumed that the convention, while declaring that the General Assembly had "full power" over the subjects mentioned in the section, meant by its silence to take away a power that had existed from the foundation of the government. No language used takes from the legislature full power and authority over the whole subject, but a rule of construction is invoked to take it away by implication. We are unwilling, under the circumstances, to imply a revocation of a power of such long existence. If the convention had desired to restrain the legislature in this matter, after so great a lapse of time, we are satisfied it would have done so in express terms. Certainly we are unwilling to imply such restraint. Generally, when the convention has desired to place a restraint upon the legislature, it has done so expressly, as by providing that the General Assembly *shall not* charter a church, pass a bill of attainder, *ex post facto* law, law impairing the obligation of a contract, applying a religious test, authorizing a lottery, or the like. In the instant case, complete authority over the whole subject of intoxicating liquors has not been taken away from the legislature by an express provision, nor do we think it results by necessary implication.

This view of the nature of section 62 of the Constitution is confirmed by the debtes thereon in the convention. During the discussion of a motion to strike the section out, Mr. R. Walton Moore said: "This morning I inquired of some

of the members of the committee, including the chairman, if any question seemed to exist as to the power of the General Assembly to enact a dispensary system, unless authorized by the Constitution. They answered in the negative." Mr. Quarles said he had seen in the press that some circuit court had held a dispensary law unconstitutional and he wished to remove all doubt on the subject. Proceeding further to insist on the retntion of the section, he said: "What harm will it do? Why should not every doubt about the question whether or not the legislature has full power to deal with this matter be removed? It may do some good and I think it will; it certainly can do no harm. I think the legislature has the power already, but I may be wrong." Thereupon, the section was adopted. Debates Constitutional Convention, pages 2751-2.

The court is of opinion that the purpose of the act is a wise one, but even if it were of a different opinion, it could make no difference in the result so long as it is within the legislative power, for judicial opinions of expediency cannot be substituted for the will of the legislature when constitutionally expressed. As said in *Purity Extract Co.* v. *Lynch,* 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184: "It is also well established that, when a State exerting its recognized authority undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective. It does not follow that because a transaction separately considered is innocuous it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the government. *Booth* v. *Illinois,* 184 U. S. 425, 22 Sup. Ct. 425, 46 L. Ed. 623; *Otis* v. *Parker,* 187 U. S. 606, 23 Sup. Ct. 168, 47 L. Ed. 323; *Ah Sin* v. *Wittman,* 198 U. S. 500, 504, 25 Sup. Ct. 756, 49 L. Ed. 1142; *New York, ex rel. Silz*

v. *Hesterberg*, 211 U. S. 32, 29 Sup. Ct. 10, 53 L. Ed. 75; *Murphy* v. *California*, 225 U. S. 623, 32 Sup. Ct. 697, 56 L. Ed. 1229, 41 L. R. A. (N. S.) 153. With the wisdom of the exercise of that judgment the court has no concern; and unless it clearly appears that the enactment has no substantial relation to a proper purpose, it cannot be said that the limit of legislative power has been transcended. To hold otherwise would be to substitute judicial opinion of expediency for the will of the legislature, a notion foreign to our constitutional system."

We are of opinion that the provisions of the act of Assembly approved March 10, 1916 (Acts 1916, page 215), commonly known as the prohibition act, so far as called in question in this case, are not forbidden by section 62 of the Constitution of this State.

Counsel for plaintiffs in error cited *State* v. *Gilman*, 33 W. Va. 146, 10 S. E. 283, 6 L. R. A. 847, as authority for the position that the prohibition statute in this State is unconstitutional. In that case the Constitution of West Virginia declared that, "Laws may be passed regulating or prohibiting the sale of intoxicating liquor within this State." Const., Art. 6, sec. 46. The legislature of West Virginia enacted a statute making it a penal offense to "solicit or receive orders for, or *keep in his possession for another*" (Code 1887, chap. 32, sec. 1, as amended by Laws 1887, chap. 29), intoxicating liquors. The court held that the act was in conflict with both the federal and State Constitutions, and was therefore void. The decision was made in 1889, and is not in consonance with the authorities hereinbefore cited, most of which are of much more recent date. For this reason we are unable to follow it.

Another objection to the indictment is that it contains but one count, and yet it charges many offenses, and that it does not inform the defendant of "the cause and nature of his accusation."

The act covers thirty printed pages and abounds in offenses created and penalties imposed. Section 3 of the act defines about one dozen specific crimes, and section 5 declares that any person who shall violate *any provision of this act*, shall, except as otherwise herein provided, be deemed guilty of a misdemeanor. Section 7, as we have seen, declares that "while any good and sufficient indictment may be used, an indictment for any first offense under sections three, four and five of this act, shall be sufficient if substantially in the form or to the effect following." The allegation, therefore, that the single count charges more than one offense is fully sustained. All of the offenses charged, however, are misdemeanors. It has been held more than once in this State that, while any number of misdemeanors of the same nature and punishable in the same manner may be charged in the same indictment, there must be a separate count for each offense, and that a defendant cannot be convicted of more offenses than there are counts. *Mitchell's Case,* 93 Va. 775, 20 S. E. 892; *Hatcher & Shaw's Case,* 106 Va. 827, 55 S. E. 677. If the defendant cannot be "convicted of more offenses than there are counts" in the indictment, it follows that he cannot be lawfully charged with more than one offense in a single count.

We have no disposition to detract from anything said in the cases cited, but they must be read in the light of the conditions existing when they were rendered. At that time there was no statute on the subject, and they announce the principle existing *in the absence of statutory regulation.* The act under consideration in effect declares that more than one offense arising under the statute may be charged in a single count. The power of the legislature to change rules of procedure is unquestionable, except as restrained by the Constitution, and we can see no good reason why it may not provide that what has heretofore required several

counts in an indictment may now be accomplished by a single count, provided the prisoner is not unlawfully prejudiced thereby. If the prisoner is not prejudiced, it is a matter of mere procedure and clearly within the province of the legislature. The prisoner is not so prejudiced if he is fully put upon notice of the cause and nature of the offense with which he is charged, and is afforded ample opportunity to make his defense.

It is claimed by the plaintiffs in error that the constitutional provision, "that in all criminal prosecutions a man hath the right to demand the cause and nature of his accusation" (Const. 1902, sec. 8), has been ignored. It is a fundamental proposition that in all cases, civil as well as criminal, a person haled into court has the right to demand that he be told in plain, intelligible language what is the cause of the complaint against him; and this right, in so far as it relates to crimes, is guaranteed by both the federal and State Constitutions; the federal Constitution, applicable to prosecutions by the United States, declaring that, "In all criminal prosecutions, the accused shall enjoy the right to * * * be informed of the nature and cause of the accusation" (amendment VI), and the State Constitution, "That in all criminal prosecutions a man hath the right to demand the cause and nature of his accusation." (Va. Const., sec. 8.) It will be observed that the language of the two Constitutions is substantially the same. We have no case in Virginia defining what is meant by "cause and nature of the accusation," but it is very clearly set forth by Chief Justice Waite in *United States* v. *Cruikshank*, 92 U. S. 543, 23 L. Ed. 588. Paragraph 12 of the syllabus in that case, taken almost literally from the opinion, is as follows:

"In criminal cases, prosecuted under the laws of the United States, the accused has the constitutional right 'to be informed of the nature and cause of the accusation.'

The indictment must set forth the offence with clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged; and every ingredient of which the offence is composed must be accurately and clearly alleged. It is an elementary principle of criminal pleading, that, where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition, but it must state the species—it must descend to particulars. The object of the indictment is—first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances."

After thus stating the law, the Chief Justice gives a number of instances of allegations deemed too vague and uncertain, and says: "The accused has, therefore, the right to have a specification of the charge against him in this respect, in order that he may decide whether he should present his defence by motion to quash, demurrer, or plea; and the court that it may determine whether the facts will sustain the indictment."

To the same effect is *Head's Case,* 11 Gratt. (52 Va.) 819, and *Arrington's Case,* 87 Va. 96, 12 S. E. 224, 10 L. R. A. 242, holding that the indictment must always allege the offense with such fullness and precision that the defendant may know for what he is prosecuted, and thereby be enabled to prepare his defense, and that the conviction

or acquittal may be pleaded in bar of any future prosecution for the same offense. The subject is discussed with ability by Downey, C. J., in *McLaughlin* v. *State,* 45 Ind. 338. In *State* v. *Terry,* 109 Mo. 601, 19 S. W. 206, Sherwood, C. J., goes into the subject very fully, and discusses it with ability. In that case the legislature of Missouri had passed a statute on the subject of obtaining money by false pretences and authorized a brief form of indictment without giving the necessary details of the offense. Commenting upon the indictment prescribed by this statute, the Chief Justice said: "The legislature may change it in form, but cannot change the substance of its material averments, without impinging upon constitutional guaranties."

Referring to the provision of the Bill of Rights of that State, similar to the Bill of Rights in this State, declaring that a man has the right to demand the cause and nature of his accusation, he said: "The right to make such a demand is just as great, just as mandatory, as any other of the kindred rights grouped together in the same section of the Constitution. So that the simple question is here presented, does an indictment which follows the statutory form prescribed, and uses the precise language set forth in the section quoted, meet with the requirements of the Constitution? \* \* \* But the 'nature and cause' of an accusation are not stated where there is no mention of the full act, or series of acts, for which the punishment is to be inflicted."

In 1 Arch. Crim. Pl. & Pr. 88, it is said: "The principal rule as to the certainty required in the indictment may, I think, be correctly laid down thus: That where the definition of an offense, whether by a rule of common law or by a statute, includes generic terms (as it necessarily must), it is not sufficient that the indictment should charge the offense in the same generic terms as in the definition, but it must state the species, it must descend to particulars." To

the same effect see *Mears* v. *Com.,* 2 Grant. Cas. (Pa.)
385; *Com.* v. *Phillips,* 16 Pick. (Mass.) 211; *U. S.* v. *Mills,*
7 Pet. 142, 8 L. Ed. 636; *United States* v. *Cook,* 17 Wall.
174, 21 L. Ed. 538; *State* v. *Learned,* 47 Me. 426; 1 Chitty
Cr. Law, 170; 1 Bishop Cr. Pr., secs. 81, 86, 88, 519.

Tested by the doctrine of these cases, the indictment
under consideration, standing alone and unaided by the
particulars of the offense, is, in some of its aspects, plainly
insufficient.  For instance, by section 3 of the act it is made
an offense to "transport" for sale ardent spirits, and yet
the indictment, under section 7, nowhere mentions "trans-
port" as one of the offenses of which evidence may be of-
fered.  Section 3 makes it an offense to "advertise" for
sale, or to "aid in procuring ardent spirits" without stating
the facts constituting the offense; and by section 4 it is
made an offense to act as "agent" or "employee" in certain
instances, without stating the facts showing such agency or
employment; but these various offenses may be committed
in different ways.  In fact, there may be serious conflict as
to whether a given act amounts to advertising, or amounts
to aiding, or to acting as agent or employee, in all of these
cases.  We have but to look to section 19 of the act on the
subject of advertising to show the various kinds of acts
which may be done and which are punishable as violations
of the act, and yet the indictment gives the defendants no
notice of them. Ordinarily, the acts done should be charged,
in order to give the defendant the necessary information.
It is the function of an indictment to charge facts and not
legal conclusions.  *Bishop's Case,* 13 Gratt. (54 Va.) 785.
The indictment undertakes to charge the defendant with
all of the first offenses under sections 3, 4 and 5 of the act,
but does not fully inform the defendant "with clearness
and certainty" of the "cause and nature of his accusation."

While the Constitution guarantees to every man the
right to demand "the cause and nature of his accusation,"

it does not prescribe the manner in which this demand shall be complied with. It does not require that it shall be by indictment, or in any other prescribed manner. It may be by presentment or information, or in any other manner the legislature may provide. Furthermore, the right guaranteed by the Constitution is the right to demand "the cause and nature of his accusation." If he does not choose to demand it, he is under no obligation to do so. It is a right that he may waive if he chooses, and which he will be held to have waived unless he asserts it.

We have no case in this State involving the right to demand a bill of particulars of either the Commonwealth or the defendant in a criminal case, but the practice is a common one in a great majority of the States, and also in the federal courts. 22 Cyc. 371-2, and cases cited. In *Mathis* v. *State,* 45 Fla. 46, 34 So. 287, a very comprehensive review of the authorities is given, but it is not deemed necessary to refer to or discuss them further than to say that, in a number of the cases referred to, it is said that the granting of a bill of particulars lies in the discretion of the trial court whose ruling on the subject is not subject to review. In many cases this is probably true, but it is not true where the charge in the indictment is too general and indefinite to appraise the defendant of the cause and nature of his accusation, without the aid of some sort of specification, or a bill of particulars. Wherever this is the case it is reversible error for the trial court to refuse to require such particulars to be furnished.

Except in the single case of an indictment under the prohibition law, the law of this State is that there cannot be more offenses than there are counts in the indictment, and, if the Commonwealth offers evidence of more than one, the proper practice is for the defendant to ask the court to compel the Commonwealth to elect to which one it will

prosecute. *Hatcher & Shaw's Case*, 106 Va. 827, 55 S. E. 677.

The right to call for, and the duty to furnish, a bill of particulars in civil cases is of frequent application, and is regulated by section 3249 of the Code. The statute confers the right "in any action or motion," and declares how it may be enforced. We do not think that this statute was intended to apply to a criminal prosecution, but the right is inherent in the trial court in the orderly administration of justice, to prevent wrong and injustice to persons who are presumed to be innocent, and to assure to them their constitutional rights. *State* v. *Lewis*, 69 W. Va. 472, 72 S. E. 475, Ann. Cas. 1913 A, 1203. It is not to be presumed that less particularity is required in a criminal prosecution than in a civil action. The object of the bill is to state with greater particularity than is done in the indictment "the cause and nature of his accusation." The indictment, of course, must charge the offense, and if it fails to give the information necessary to enable the defendant to concert his defense, such information may be supplied by a bill of particulars; but if the offense is not charged in the indictment, the defect cannot be supplied by a bill of particulars. A bill of particulars may supply the fault of generality or uncertainty, but not the omission of an essential averment of the indictment. Such being the function of the bill of particulars, it is readily observed that by giving an absolute right to demand it, the indictment may be greatly simplified, as is done in the present instance, and at the same time no injury or injustice be done to the accused.

The language of the indictment is comprehensive enough to embrace the offenses intended to be charged, but as to some of these is not specific enough to give to the defendants the information to which they are entitled. Prior to the statute, every misdemeanor enumerated in the statute

might be charged in separate counts in one indictment, but each count would have to set out the offense with requisite certainty. The change made by the statute consists in allowing all of the offenses to be charged in one count, instead of many counts, but whether charged in one or many, either the indictment itself must inform the defendant of the cause and nature of his offense, or this information must be furnished in some other way if demanded. If it is not given in the indictment, and no other method is provided for giving the information, the defendant will be denied his constitutional right. The same section of the Constitution which gives to him the right to demand the cause and nature of his accusation, also gives to him the right to a jury trial. He is as much entitled to one as to the other. If a jury trial is denied in the administration of criminal law, it is as much a violation of the constitutional right of the defendant as if it had been denied by statute. Hence, if the frame of the indictment under section 7 be upheld, as we think it should be, then the defendant must, in some other way, in proper cases, when demanded, be informed of the cause and nature of his offense, else he will be denied a constitutional right by the manner in which the statute is administered. We cannot look to the evidence and say that the defendant has not been injured by a denial of this right. As well might we say that if a defendant was clearly guilty and a jury trial had been refused, no injury has been done him. A denial of a constitutional right is of itself reversible error. We suppose that no one would doubt that however guilty a defendant might be, if the trial court denied him a jury trial, its judgment would of necessity have to be set aside. It is no greater hardship to require the Commonwealth to give the prisoner such information of the offense charged against him as will enable him to prepare to meet the charge than it is to require a private litigant to furnish like information to his op-

ponent. The act under which the defendants were indicted requires that it shall have a liberal construction, and we think we have given it such a construction in upholding the sufficiency of section 7. We have not in any way marred its efficiency by requiring a bill of particulars stating the nature of the offense in proper case, when demanded. As pointed out by Judge Buchanan in *Hatcher & Shaw's Case,* 106 Va. 827, 55 S. E. 677, all of the jurors may think that the accused is guilty and so find him, without having in fact agreed that the evidence as to any particular sale was sufficient," when in fact the prisoner is entitled to a unanimous verdict on every offense charged. Whether or not he shall be tried for more than one offense is to be determined by other considerations, which involve the doctrine of election.

The subject of election has been discussed in a number of cases before this court, some of them misdemeanors and some felonies. *Dowdy's Case,* 9 Gratt. (50 Va.) 727, 60 Am. Dec. 314; *Lazier's Case,* 10 Gratt. (51 Va.) 708; *Anthony's Case,* 88 Va. 847, 14 S. E. 834; *Lewis' Case,* 90 Va. 843, 20 S. E. 777; *Benton's Case,* 91 Va. 782, 21 S. E. 495; *Mitchell's Case,* 93 Va. 775, 20 S. E. 892; *Johnson's Case,* 102 Va. 927, 46 S. E. 789; *Fletcher's Case,* 106 Va. 840, 56 S. E. 149; *Hatcher & Shaw's Case,* 106 Va. 827, 55 S. E. 677; *Dix's Case,* 110 Va. 907, 67 S. E. 344. It is unnecessary to examine these cases in detail. Many of them are cases which involved but a single offense, charged in different ways; some of them involved more than one offense; but in none of them has it been held that if more than one offense has been charged in the indictment, the prisoner will be compelled to go to trial on all, where it is made to appear that they are so separated by time and circumstance that it would confuse and disconcert him in preparation for the trial, or the jury in consideration of the case.

As time is not of the essence of a felony, it cannot generally be told from the face of the indictment whether or not the defendant would be prejudiced by trying him for the several offenses charged in the different counts of the indictment. Each count, in theory at least, is for a separate and distinct offense, while, in fact, it may be but one offense so charged as to meet the different phases of the evidence as it may appear on the trial. It would seem, therefore, that the objection to the charge of more than one offense in the same indictment cannot, as a rule, be raised by demurrer. Neither can it be raised by motion in arrest of judgment, for the fact of difference in the offenses charged would not appear of record. The proper method seems to be by motion to quash (*Dowdy's Case, supra*), though the Commonwealth might be required to elect on which one it would proceed.

There is no reason on principle, however, why even two felonies of the same nature and punishable in the same manner may not be charged in different counts of the same indictment. Thus, where two men are killed in a single fight and the witnesses are the same, so that he could not well introduce the testimony as to one without that as to the other, the prisoner could not be confused, and there is no reason why the two offenses may not be united in the same indictment and tried at the same time. *Pointer* v. *United States,* 151 U. S. 396, 14 Sup. Ct. 410, 38 L. Ed. 208.

In *Hatcher & Shaw's Case,* 106 Va. 827, 55 S. E. 677, there was but a single count in the indictment, charging the defendants with selling liquor without license to four persons, who were named, and others, "on the —— day of March, in the year 1906, and at divers other times within the twelve months last past," and under that count evidence had been admitted tending to show a number of distinct sales running over a period of several months. At the conclusion of the Commonwealth's evidence, the defendant

made a motion to require the Commonwealth to elect upon which sale it intended to rely for a conviction. This motion the trial court overruled. In commenting upon this feature of the case, this court said: "While a party may be tried upon the same indictment for several misdemeanors of the same nature and upon which the same or similar judgments may be rendered, there must be a separate count for each offense, for he cannot be convicted of more offenses than there are counts. 1 Bish. New Proc., section 460; *Mitchell's Case,* 93 Va. 775, 20 S. E. 892.

"This being so, it would seem clear upon principle that the defendants had the right to have the Commonwealth make an election. Because of the difficulty the Commonwealth has in prosecuting offenses of this kind, or for some other reason, there has been in this class of cases some relaxation of the strict rules as to pleading and the introduction of evidence which generally prevail in criminal cases. When under these relaxed rules the Commonwealth has been allowed to allege, and to offer evidence to prove, more than one offense, there does not seem to be any reason why, at the conclusion of the Commonwealth's evidence and before the defendant offers his evidence, it should not be required to elect upon which sale it seeks a conviction. By requiring such an election the prisoner knows what charge it is necessary for him to meet in making his defense. This in common fairness he has a right to know. Such a course also saves time and expense by rendering it unnesessary for the defendant to offer evidence to disprove any other charge. It brings the mind of the jury to the consideration of a single sale. Another reason why the Commonwealth should be required to elect where evidence has been introduced as to a number of offenses, and there can only be a conviction as to one sale, is that some of the jurors may believe that the evidence of a particular sale is sufficient to convict, while others may think the evidence of that sale is not suf-

ficient, but· are satisfied that some other sale has been proved. All of the jurors may think that the accused is guilty, and so find him, without in fact having agreed that the evidence as to any particular sale was sufficient. The result is that if there is no election the accused, who is indicted for one offense, is tried for many and convicted of. one, but of which one of the many the court cannot say.

"It may be that juries are not likely to be so careless as to bring in a verdict without an agreement of the part of all as to a particular sale, but it is a danger which can be avoided by requiring an election."

This case has been cited, with approval, a number of times. In *Dix's Case*, 110 Va. 907, 67 S. E. 344, referring to the subject of election, the statement of Mr. Bishop is again approved, that "the better view seems to be that that question should be left to the discretion of the trial judge, to be exercised with reference to the special facts of the case." Both of these cases were indictments for misdemeanors.

Inasmuch as the statute under which the defendants were indicted permits more than one offense to be charged in a single count, we do not think that the defendants had the absolute right to demand of the attorney for the Commonwealth that he should elect for which of the several offenses he would prosecute. He might desire to prosecute for more than one. It was a matter resting in the sound discretion of the trial court whether or not an election should be compelled. This was to be determined by considerations entirely different from those which give the right to a specification of the particulars of the offense.

Specification, or a bill of particulars, is allowed in order to apprise the defendant of "the cause and nature of his accusation," when the indictment is not sufficiently specific for that purpose; election, to avoid embarrassing him in

106

making his defense after he has been apprised of the particulars of the several offenses charged.

On account of the gravity of the punishment, this court has been more particular in compelling election in felony cases than in misdemeanors, but the same principle would seem to apply in the one case as in the other. While the Commonwealth must be permitted to charge an offense in various ways to meet the evidence as it may be adduced on the trial, if, by reason of charging several distinct offenses widely separated by time, place and circumstances, the defendant will be seriously embarrassed in making his defense, whether the offense be felony or misdemeanor, the election should be compelled.

Upon a review of the cases and a consideration of the principle involved, we deem it best, where several distinct misdemeanors are charged in the same indictment, to leave it to the sound discretion of the trial court to determine whether or not there shall be an election, only remarking that where the evidence offered of one transaction is widely separated by time, place and circumstances from that offered of another transaction, so that the prisoner would be embarrassed in making his defense if compelled to try both at the same time, the Commonwealth should be compelled to elect on which one it will proceed.

Although the Commonwealth is active in the suppression of crime, and prompt and vigorous in its punishment, it is very jealous of the liberty of the citizen, and throws around him every safeguard of a fair and impartial trial. It gives him the "right to demand the cause and nature of his accusation," thereby assuring him of all needful information of the offense with which he is charged; it guarantees to him "a speedy trial by an impartial jury of his vicinage, without whose unanimous consent he cannot be found guilty," thereby assuring him a prompt trial, an impartial tribunal and a just verdict; and it warns the jury that they

are not to convict unless satisfied of the guilt of the accused beyond a reasonable doubt. It has been hereinbefore pointed out that some of the offenses charged in sections three and four of the act are not sufficiently described in the indictment, and if the defendants had demanded a more specific statement of the "cause and nature" of their offense, and it had been refused, the Commonwealth would have been limited in its proof to those that were adequately described, and proof of other offenses would have been a denial of the constitutional right to demand "the cause and nature" of their offense. But in the instant case, no such demand was made, and it is not disclosed by the record that any right was denied them, or that any injustice has been done them.

A number of cases have been cited by the learned Attorney General to the effect that it is sufficient to charge a statutory offense in the language of the statute defining it, but they have no application to an omnibus charge of numerous offenses, all of which could not have been committed by one person at the same time, and which leaves the defendant in doubt and uncertainty upon which a conviction will be asked. *State* v. *Terry, supra; United States* v. *Cruikshank, supra.*

It is also said that section 7 of the act under consideration was taken from the West Virginia statute, which has been held to be a valid enactment by the Supreme Court of that State, and it has been argued by the Attorney General that by adopting the act of West Virginia the legislature also accepted the construction thereof by the Supreme Court of that State, including the determination of its validity and sufficiency. But it has been recently held by this court: "While the interpretation by the highest court of a State from which a statute is taken will be followed, the legislature cannot, by enacting a statute which has been held constitutional and valid by the highest court of another

State, deprive the courts of this State of the right to determine for themselves the constitutionality of such statute." *Boyd* v. *Ritter Lumber Co.*, 119 Va. 348, 89 S. E. 273.

On the trial of this case, after the Commonwealth had introduced two witnesses, Viola Ross and Mary Williams, who testified that they had bought the liquor with which they were made drunk from the defendants, and that they had also bought liquor from J. T. Thompson, the defendants offered J. T. Thompson as a witness, and proved by Thompson that the two prosecuting witnesses had not bought any liquor from him. The defendants then offered to prove by Thompson that the two prosecuting witnesses, Viola Ross and Mary Williams, broke open his house while he was at church, broke into his trunk and took out a gallon of whiskey. The Commonwealth's attorney objected to this testimony as being irrelevant, and the court sustained the objection, and refused to allow the defendants to introduce that evidence. This action of the trial court is assigned as error.

There was no error in the ruling of the court. The charge against the defendants was the sale of intoxicating liquor, and this charge was sustained by the evidence of the two witnesses mentioned. Evidence that the same two witnesses broke into the house of the witness Thompson, and stole a gallon of whiskey, and were afterwards found drunk, was wholly irrelevant to the offense with which defendants were charged; and the larceny alleged threw no light on the illegal sale. Both charges may have been true.

Objection is also made to the ruling of the trial court in granting and refusing instructions. Instructions "A" and "B," given for the Commonwealth, were as follows:

"A." "The court instructs the jury that if they believe from the evidence in this case beyond a reasonable doubt that the defendants, John Pine and Sarah Scott, or either of them, had in their, or his, or her possession, in their, or his, or her home, as the case may be, in the city of Roanoke,

Virginia, at any time within the time laid in the indictment in this case, more than one gallon of distilled liquor, or more than three gallons of beer, that this would be *prima facie* evidence that the said defendants, or the one so in possession of such distilled liquor, or beer, had the same for sale, although the jury may further believe from the evidence that said defendants, or the one so having in his or her possession, such distilled liquor or beer, acquired the same prior to November 1, 1916.

"The punishment for such an offense is by a fine of not less than $50.00 nor more than $500.00, and confinement in jail for a period of not less than one, nor more than six months."

"B." "The court instructs the jury that it is not alone an actual sale of ardent spirits, that constitutes an offense under the law, under which this indictment is drawn, but it is also an offense for a person to keep or store for sale, or to give away, or dispense ardent spirits under said law except in the manner therein provided; therefore, the court tells the jury, that although they may not believe from the evidence in this case that the defendants, or either of them, sold ardent spirits within the time mentioned in the indictment in this case, yet, if they do believe from the evidence in this case, beyond reasonable doubt, that the said defendants, or either of them, during the time laid in the indictment in this case, kept or stored ardent spirits for sale, or to give away, or dispense, as is alleged in the indictment, then they, or the one so keeping or storing for sale such ardent spirits, or to give away or dispense the same would be as guilty under the indictment in this case, as if they, or either of them, had actually sold or given away ardent spirits."

Instruction "A" is in substantial conformity with section 65 of the prohibition act (Acts 1916, p. 215), and is free from objection. The act on this point makes no distinction

as to the time of acquisition of the ardent spirits, but declares that the *possession* shall be *prima facie* evidence of a "purpose of sale." It merely establishes a rule of evidence. That such rules may be established by the legislature is well settled both here and elsewhere. *Runde* v. *Commonwealth,* 108 Va. 873, 61 S. E. 792; *Commonwealth* v. *Austin,* 97 Mass. 505; *Frudic* v. *State,* 66 Neb. 244, 92 N. W. 320; *State* v. *Intoxicating Liquors,* 80 Me. 57, 12 Atl. 794; *Leavitt* v. *Baker,* 82 Me. 26, 19 Atl. 86.

Instruction "B" told the jury, amongst other things, that if they believed that the defendants kept or stored ardent spirits for sale or *to give away* they would be as guilty as if they had actually sold or given away ardent spirits. Under different circumstances this instruction would be misleading, if not erroneous, as section 61 of the act allows one in his own home to give away ardent spirits "when the quantity of such spirits shall not exceed the quantity allowed by this act." But instructions must be read in the light of the evidence offered on the trial. In the instant case, the evidence was of a sale and not of a gift, and at a restaurant and not in a home. The sale, if made, was illegal, no matter where made, or whether the ardent spirits were obtained before or after November 1, 1916, when the prohibition act went into effect. The instruction, therefore, could not have misled the jury.

Instruction No. 1, asked for by the defendants, was as follows:

"1. The court instructs the jury that if they believe from the evidence that the defendants had the liquor in their possession prior to November 1, 1916, at which time the present liquor law came into effect, then such possession creates no presumption against them."

The defendants could not have been injured by the refusal of this instruction, if it be conceded to be a correct statement of the law, as instruction 2, given at their in-

stance, stated the law as favorably to them as they were entitled to. That instruction was as follows:

"The court instructs the jury that if they believe from the evidence that the defendants purchased the liquor prior to November 1, 1916, and had it for their own use and not to sell and did not sell the same, they should find them not guilty."

Instruction 4, asked for by the defendants, was as follows:

"The court instructs the jury that notwithstanding the fact that possession of more than one gallon of liquor constitutes *prima facie* evidence of guilt, still, if the evidence shows that the liquor was purchased before November 1, 1916, and stored away by the defendants for their own use, then the *prima facie* evidence is overcome and the Commonwealth is then required to prove by clear, distinct and reliable evidence that the defendants had the same for the illegal purpose mentioned in the indictment and if the Commonwealth has not so proven, they should find the defendants not guilty."

If there was any error in refusing this instruction, it was harmless, as the court had already given, at the instance of the defendants, instruction 3 which sufficiently protected their rights. Instruction 3 was as follows:

"The court instructs the jury that notwithstanding the fact that possession of more than one gallon of liquor constitutes *prima facie* evidence of guilt, still if you believe from the evidence that the liquor was purchased before November 1, 1916, and stored away by the defendants for their own use, you should find them not guilty."

It is further insisted, however, on the part of the Commonwealth that instruction 4 was erroneous because it is unlawful to keep, even in a home, more than one gallon of whiskey or etc. after November 1, 1916, no matter when or for what purpose acquired.

Section 3 of the act declares, amongst other things, that "After November first, nineteen hundred and sixteen, it shall be unlawful for any person in this State to manufacture, transport, sell, keep or store for sale, offer, advertise or expose for sale, give away or dispense or solicit in any way, or receive orders for or aid in procuring ardent spirits, except as hereinafter provided." From this it was argued for the Commonwealth that it was unlawful for a person to "keep" in his home for his personal use an amount of distilled liquor in excess of one gallon. But we do not so construe the statute. The connection in which the word "keep" is used shows that it was not intended to apply to such a case. The language is, "sell, keep or store for sale," offer, advertise or expose for sale," etc., showing that the legislative purpose was to prohibit the keeping for the purpose of disposition to others, and not for private use. This is made more manifest when this section is read, as it must be, in connection with section 65, which declares that "the possession in his home of more than one gallon of distilled liquor * * * at any one time, shall * * * be *prima facie* evidence that such person possesses such distilled liquors * * * for the purpose of sale." If the contention of the Commonwealth be correct, that a person cannot "keep" in his home for private use more than one gallon of distilled liquor, then section 3 would be in direct conflict with section 65, which declares that such possession is only *prima facie* evidence of a "purpose of sale." It seems clear, therefore, that the act does not prohibit a possession in a home for private use, if the possession was lawfully acquired. Whether or not it is in the power of the legislature to prohibit such a possession in a reasonable quantity when the public is not affected thereby, it is not necessary to decide. No such question is presented, and it is sufficient to say that the present act does not prohibit such possession when lawfully acquired, but simply declares what the pre-

sumption shall be.   By the terms of the act the presumption is merely *prima facie* and may be rebutted.

*Affirmed.*

SIMS, J., concurring:

The case involves the preliminary and fundamental question—

1. Is section 62 of the Constitution of Virginia restrictive in its effect so that the legislature was without power to enact the statute, Acts 1916, p. 215, except with respect to the provisions of such statute which concern merely the *"manufacture and sale* of intoxicating liquors"—those portions of the statute prohibiting other acts than such manufacture and sale being, in such view of the statute, in conflict with said section 62 of the Constitution and void?

This question being answered in the negative, the case involves the following further questions concerning the exercise by the legislature of its constitutional powers, namely:

2. Is the form of the indictment prescribed by section 7 of the act sufficiently specific—does it descend from the genus to the species, from the general to the specific allegations of the particulars of the acts charged, sufficiently to inform the accused of "the cause and nature of his accusation," so as to comply with the requirements of section 8 of the Constitution of Virginia?

3. Has the trial court any longer the discretion it formerly had, on motion of the accused, to require the Commonwealth, on the trial of the case, after it has introduced its evidence in chief, to elect on the charge of what offense, or offenses, it will ask the conviction?

These questions will be considered in their order as above stated.

1. With respect to question 1:

Upon the authorities referred to, and for the reasons

107

stated in the majority opinion, the first question above must be answered in the negative, and I fully concur in such opinion on this point.

2. With respect to question 2:

The indictment in question is in the form prescribed by section 7 of the act, is for first offenses *under section* 3 of the act only, and under it the same punishment for each offense is prescribed, namely, the accused may be fined (for each offense) not less than fifty dollars nor more than five hundred dollars and be confined in jail not less than one nor more than six months." See sections 3, 5 and 7 of Acts 1916, p. 216.

Omitting the formal parts, the indictment in the instant case was as follows:

"That John Pine and Sarah Scott, within the four days next prior to the finding of this indictment, in the said city of Roanoke, Virginia, did unlawfully manufacture, sell, offer, keep, store and expose for sale, give away, dispense, solicit, advertise and receive orders for ardent spirits."

The indictment charges the statutory offenses therein set forth in the language of section 3 of the statute which creates the offenses.

So far as the charges of the respective offenses in the indictment are concerned (laying aside for the present the consideration of the charges of the offenses being all contained in one count), the following may be said:

It is firmly settled in this State, in effect, by a long line of decisions, that (so far as the sufficiency of the charges themselves is concerned) the indictment, prior to the statute in question, would have been good and would have been sufficient to meet the requirements of section 8 of the Constitution of Virginia. *Fletcher's Case,* 106 Va. 840, 56 S. E. 149; *Rose's Case,* 106 Va. 850, 56 S. E. 151; *White's Case,* 107 Va. 901, 59 S. E. 1101; *Runde's Case,* 108 Va. 873, 61 S. E. 792; *Clopton's Case,* 109 Va. 813, 63 S. E.

1022; *Dix's Case,* 110 Va. 907, 67 S. E. 344; *Ferrimer's Case,* 112 Va. 897, 72 S. E. 699; *Shiflett's Case,* 114 Va. 876, 77 S. E. 606.

The effect of the majority opinion is, as I think, to overrule all of these cases.

In *White's Case, supra; Arrington's Case,* 87 Va. 96, 2 S. E. 224, 10 L. R. A. 242, and also *Head's Case,* 11 Gratt. (52 Va.) 819, referred to in the majority opinion, are distinguished.

As stated by Judge Buchanan, in delivering the opinion of this court in *Hatcher & Shaw's Case,* 106 Va. 827, 55 S. E. 677: "Because of the difficulty the Commonwealth has in prosecuting offenses of this kind, or for some other reason, there has been in this class of cases some relaxation of the strict rules as to pleading and the introduction of evidence which generally prevail in criminal cases." And before the prohibition statute in question was enacted, the rule adopted in this State on this subject (which, however, is the same rule in principle generally prevailing everywhere and as to all crimes [1 Bish. Cr. Pr., sections 81, 82], is that, in such classes of cases, only the acts and circumstances *which are of the essence* of the statutory offense, or offenses, charged, (*i. e.,* which are the essential ingredients thereof), need be set forth in the indictment.

The result of the decisions above cited is that it has been long established in Virginia by the decisions of this court, that the charge of statutory offenses of this character in the language of the statute creating them includes all that is *of the essence* of the offense, or offenses, except the laying of the venue and an allegation bringing the case within the period of limitation for the prosecution prescribed by the statute. To illustrate: These decisions hold that *the place* of the commission of such offenses need not be alleged, save the allegation of the county or city over which the trial court has jurisdiction; nor *the time,* save

the general allegation that the offense, or offenses, was, or were, committed "within twelve months last past" (that being the statutory period of limitation) ; nor *the person or persons,* other than the accused, *concerned in the offense*—as the person or persons to whom ardent spirits were unlawfully sold; nor that the act charged was done unlawfully, or the like. All these and other circumstances than the two involving the laying of the venue and bringing the charges within the statutory period of limitation, not being of the essence of the statutory offenses, are not necessary to be specifically charged to meet the requirements of section 8 of the Constitution of Virginia aforesaid. In other words, that in such cases an indictment in the language of the statute creating an offense, with the added allegations to the effect that the offense was committed in the county (or city) having jurisdiction of the trial of it, and that it was committed "within one year" (where the statute, as in the instant case, prescribes that period of limitation) is sufficient to meet such constitutional requirement.

This holding is sound, too, on principle.

What is said in the majority opinion and quoted from various cases, on the subject of an indictment in the language of a statute being insufficient to inform the accused of the cause and nature of the accusation against him, is true in general terms. But where the offense is *malum prohibitum* only, and the statute *designates the acts, which it creates into an offense or offenses,* the nature and cause of the offense are charged with sufficient particularity in the indictment by the use of the language of the statute creating it, so that no further descent into particulars is necessary therein.

The cases of *United States* v. *Cruikshank,* 92 U. S. 543, 23 L. Ed. 588, and *State* v. *Terry,* 109 Mo. 601, 19 S. W. 206, cited and especially relied on in the majority opinion, do not involve the question under consideration, namely,

whether, where a statute makes a definite act or acts named therein an offense or offenses (as is true of the statute before us in the instant case), an indictment following the language of the statute complies with the constitutional requirement in question so as to inform the accused of the nature and cause of his accusation? These cases indeed admit that the rule is that an indictment in the language of the statute is sufficient to comply with this constitutional requirement where "the statute describes the whole offense and the indictment charges the crime in the words of the statute." *State* v. *Terry,* at p. 601 of 109 Mo., at p. 206 of 19 S. W., quoting from C. J. Shaw's opinion in *Tully* v. *Com.,* 4 Metc. (Mass.) 358. See, also, *United States* v. *Cruikshank,* at pp. 548-9, 557, of 92 U. S., 23 L. Ed. 588. The whole of this very quotation, indeed, correctly points out the precise distinction between the cases where the charge of the offense in the language of the statute creating it is not sufficient to comply with the constitutional requirement as to giving notice of the cause and nature of the accusation, and the cases where such charge is sufficient to comply with such constitutional requirement. The whole quotation referred to is as follows: Where a statute punishes an offense by its legal designation, *without enumerating the acts* which constitute it, then it is necessary to use the terms which technically charge the offense named at common law. But we think this is not necessary where *the statute describes the whole offense* and the indictment charges the crime *in the words of the statute."* The same opinion then proceeds with the following quotation from Whart. Cr. Pl. & Pr., section 220: "On general principles of common law pleading, it may be said that it is sufficient to frame the indictment in the words of the statute, in all cases where the statute so far *individuates* the offense that the offender has proper notice, from the mere adoption of the statutory

terms, what the offense he is to be tried for really is." (Italics supplied).

The statute so far *individuates* the offense when it, itself, designates *the acts* which it enacts shall constitute the offense or offenses created thereby.

In *United States* v. *Cruikshank, supra,* the indictment was for conspiracy under the 6th section of the act of Congress of May 31, 1870, known as the enforcement act (16 U. S. Stat. 140, C. 114 [Comp. St. 1916, section 10183]), by which the offenses created thereby are made to consist in *the unlawful combination, with an intent* to prevent the enjoyment of any right granted or secured by the United States Constitution, etc. All rights are not so granted or secured. Whether one is so or not was a question of law to be decided by the court. The statute did not describe the whole offense—name the acts which would constitute the offense. Hence, the court held that the indictment should state the particulars to inform the court as well as the accused of the nature and cause of the accusation. There the particulars *not covered by the allegations in the language of the statute* were of the essence, or were essential ingredients of the offense.

In *State* v. *Terry,* 109 Mo. 601, 19 S. E. 206, the indictment was for an attempt to obtain money by fraud, in the form prescribed by statute for such an indictment. This form did not contain a description of the money, or the means used to obtain it. The court held that the two things last named were essential ingredients of the offense charged, were not covered by the allegations of the indictment, and, although the form of the indictment was as prescribed by statute, that statute was itself unconstitutional, in that it did not require all of the essential ingredients of the offense to be charged in the indictment.

These, therefore, were very different cases from one such as the instant case, where the statute itself under which it

was found provides that certain acts therein named shall themselves constitute, respectively, the several offenses thereby created, and sets forth the prohibited acts which are made such offenses by the statute.

Independent of authority elsewhere, however, the rule in Virginia on the subject has been firmly settled, as aforesaid, by the long line of decisions of this court above cited.

The majority opinion enumerates some of the acts designated by the statute in question as offenses under the statute, to-wit: (1) to transport for sale; (2) to advertise for sale; (3) to aid in procuring ardent spirits, and (4) to act as agent or employee in certain instances, as not sufficiently charged in the indictment. The last two acts named are not charged in the indictment in the instant case following the form of section 7 of the statute. Reference will be hereinafter made to the subject of the first named acts. I am unable to perceive why the charge in an indictment, that the accused did "advertise for sale * * * ardent spirits," (the offense of advertising under section 3 of the act) is not as much a sufficient allegation of that act as the allegation that he did "manufacture," or "sell," or "offer, keep, store and expose for sale," "give away," "dispense," "solicit and receive orders for ardent spirits." All of the latter allegations, being in the language of the statute creating offenses of such acts, respectively, have been held (expressly as to some and by necessary inference as to others) by the long line of Virginia decisions aforesaid to be sufficient to comply with the constitutional requirement on the subject. The indictment put in issue the ultimate question of facts of whether the accused did "advertise for sale ardent spirits," and in the case of advertising, prohibited by section 3 of the act, as in the cases of the other acts charged in the indictment, the latter put in issue the ultimate questions of fact, whether the respective acts charged were done by the accused. The circumstances attending

and the various details of the action going to make up and constitute the ultimate acts prohibited by the statute are mere matters of evidence, equally in all such cases, and are not necessary to be charged in the pleading (the indictment).

Hence, with respect to the character of offenses we are considering, charged in the indictment in the instant case, the precise point is this, the indictment need not use other language than the statutory language creating the offense —need not descend to other particulars in the charge of the commission of the offenses—except to lay the venue and bring the cause within the statutory period of limitation upon the prosecution.

The form of indictment prescribed by section 7 of the act fulfills these requirements. So does the indictment in the instant case. The latter charges the precise date on which the offenses charged are alleged to have been committed, although that particularity was unnecessary, as aforesaid, and lays the venue.

I cannot arrive at any other conclusion, therefore, than that the indictment in the instant case is sufficient to meet the requirements of section 8 of the Constitution of Virginia.

Hence, under the firmly settled rule aforesaid, established before the statute in question was enacted, so far as the particulars of the offenses charged in the indictment are concerned, the indictment itself gave to the accused all the information necessary for the preparation of his defense which the Constitution requires; and, therefore, the indictment needed no bill of particulars to aid it.

Indeed, if the practice of requiring a bill of particulars to be furnished in criminal cases, heretofore unused in Virginia, were adopted by us in practice, if that practice were made to accord with it as prevailing elsewhere (as indeed is noted in the majority opinion), it would not be manda-

tory upon, but would rest merely in the, sound discretion of the trial court, to require a bill of particulars in certain cases. This would not, in all cases, aid the indictment in the matter of particularity of its allegations—of its descent from the general to specific allegations. And it would open up a wide field of judicial uncertainty as to when the court should exercise its discretion to require a bill of particulars to aid the indictment in complying with the constitutional requirement aforesaid. The majority opinion suggests that the practice of requiring a bill of particulars in such case be adopted with this addition to the practice, namely, that its requirement be made mandatory in certain cases. This would be something new in procedure never prevailing as a hard and fast rule at common law. 1 Bishop on Cr. Pr., section 533 and section 454. And if the latter rule were adopted it would be in effect but a requirement that the indictment be more specific in its charges of the offenses in question than has been the practice heretofore in Virginia. The change in practice would accomplish nothing new or beneficial in effect. If an indictment is insufficient to comply with the requirements of section 8 of the Virginia Constitution, the question can be raised as well by motion to quash the indictment under our established practice as by a motion for a bill of particulars to aid the indictment. With all due deference, therefore, I am of opinion that there is no need for any change of practice on the subject; and I think, moreover, that such change would open a Pandora's box of uncertainties about matters which have been long set at rest by the decisions of this court.

The majority opinion, while saying that the indictment is sufficient under section 8 of the Virginia Constitution, yet holds it insufficient unless aided by a bill of particulars. The opinion holds that the indictment is sufficient *on demurrer only* and because the constitutional requirement is

not that the needed information must be furnished by *an indictment,* and hence that it may be furnished in some other way, namely, by a bill of particulars; and that the court, by changing the practice in Virginia so as to require a bill of particulars in such case in aid of the indictment, can supply the constitutional requirement in question. With the utmost deference, it seems clear to me that in making such requirement the court is adding a requirement not in the statute, and to that extent it is modifying and changing (and, in effect repealing) the statute. There is no statute or rule of practice heretofore existing in Virginia providing for a bill of particulars in criminal cases. Hence, the legislature, by the act in question, has, in effect, said that the indictment in the form in which it is in the instant case is sufficient in itself to inform the accused of the cause and nature of his accusation, without the aid of anything else whatsoever. To hold otherwise is to abolish this rule everywhere established, in doing so to overrule the long line of decisions in Virginia on the subject, and, further, in effect to repeal the statute under consideration, *pro tanto.*

I am not opposing the idea that the requirement of a bill of particulars in criminal cases, as in civil cases, would be in aid of the accused, in that it would lessen the burden otherwise resting upon him of coming to trial prepared to make his defense *in all particulars* against the charges against him *put in issue* by the indictment, or that the appeal might not be very strong to the legislature to provide for such aid being extended to the accused in some criminal cases; but it seems to me that it is significant that the legislature has never so provided, and further that our courts have never put such a practice into effect in any criminal case. And on an appeal to the legislature to enact such a provision, if made, I can understand how the legislature might regard the Commonwealth in prosecuting the statu-

tory offenses under consideration as not standing in the same position as to possession of information before trial of particulars touching the commission of the offense or offenses put in issue as is the plaintiff in a civil case touching the particulars of his own cause of action, they being naturally within his own knowledge. Hence, I can understand how the legislature might hestitate to require the same particularity of statement of the Commonwealth in such cases as is required (by statute in Virginia) of a plaintiff in civil cases, by bill of particulars, and how such requirement might result in serious and undue embarrassment of the former in enforcing the statute creating such offenses, and how the legislature might decline to extend such aid to the accused in such cases; as indeed it has declined to do by enacting, as it has done by the statute in question, that the indictment in question is sufficient as aforesaid. If this is a hardship upon the accused in such cases, it is a hardship imposed by the legislature, which, if not inhibited by the Constitution, the courts are powerless to relieve against.

Hence, the question involved in the proposition, that the court shall inaugurate the practice of requiring a bill of particulars in cases of the character under consideration, in turn involves, after all, the ultimate question, whether the statute in enacting, in effect, that an indictment charging the offenses as they are charged in the instant case, is in violation of section 8 of the Constitution of Virginia? As we have seen above, such question must, as I feel, be answered in the negative and in favor of the sufficiency of such an indictment.

It is true, as noted in the majority opinion, that section 7 of the said statute omits the charge of the offense of *transporting* ardent spirits for sale from the form of indictment thereby prescribed. This was a manifest clerical omission. Its effect is, clearly, only that, under an indictment follow-

ing the form of such section of the statute, no evidence of transporting ardent spirits for sale would be admissible, if objected to, and in such case, unless the indictment was properly amended, there could be no conviction thereunder of the offense of transporting ardent spirits for sale. No such evidence was offered or admitted in the instant case, and so this point does not arise therein.

It results from the foregoing considerations, that the only change which section 7 of said act has made in the law, as it was aforetime, is to allow, in the charge of an offense or offenses under the statute, all of the offenses created by sections 3, 4 and 5 thereof, to be charged in one indictment.

As correctly pointed out in the majority opinion, if the indictment is sufficiently specific in its charges to be valid under section 8 of the Constitution of Virginia (and the act is not in contravention of section 62 of the Virginia Constitution), the power of the legislature to provide such form of indictment is plenary and the indictment is good. As we have above seen, the indictment does not contravene section 8, and the majority opinion agrees that it does not contravene section 62, aforesaid.

The conclusion necessarily follows that upon such an indictment as that in the instant case, the accused is put upon his defense of all of the offenses charged in the indictment and must come to trial prepared to defend against all of such charges.

From the standpoint of the accused, the hardship and danger of injustice resulting from such a requirement as that mentioned in the last above paragraph is more theoretical than real. It is, in truth, less burdensome in loss of time and expense to the accused to meet a number of charges in one trial than in a number of separate trials. The accused has to bring his witnesses to meet all of the charges upon which he is in fact indicted, either in several,

or in one trial. The punishment prescribed by the statute for several offenses of which the accused may be found guilty in one trial is no greater than if there were several trials, and, in practice, it is a matter of common knowledge that the aggregate of punishment inflicted by the verdict of one jury in a single trial is apt to be less than of several different juries in separate and distinct trials. And if there be any hardship in the requirement that the accused must come to the trial prepared to defend against a number of charges in the indictment in one trial, since there is no infringement of his constitutional guarantees and the power of the legislature is plenary on the subject, to the extent it has gone in the enactment in question, as stated in substance above, the courts are powerless to afford the accused any remedy. The legislature has spoken on a subject left by the Constitution, and wisely left, I think, in its discretion. It is not within the province of the courts to interefere with that exercise of this legislative function. But—

Touching the foregoing subject, and with respect to misdemeanors, as stated by Mr. Bishop, 1 Bishop Cr. Pr. (4th ed.), sec. 458: "* * * the doctrine of the English and most American courts is * * * that if a man has been engaged in a course of unlawful conduct resulting in a hundred legally distinct petty offenses, and the executive officers of the government have determined to exercise their right, *not controllable by the judiciary,* to bring him to trial for all, it is a piece of sheer oppression to him to compel them to find against him a hundred indictments, and require him to stand his trial a hundred times, instead of answering to all at once. Moreover, on broader views, some deem, the author submits rightly, that the joining in proper cases of distinct misdemeanors in one indictment, followed by their trial at one hearing before the petit jury, and the punishment of each as though on a separate indictment, are

essential to the administration of real justice—in some cases essential as protecting the accused from the over-burden of needless trials, in others as saving the courts from being blocked by them to the utter suppression of public justice." (Italics supplied.) See also the note of Mr. Bishop (*Idem*), p. 258, on *Tweed Case,* where there were charges of four hundred and twenty offenses for viola-tion of a statute in one indictment.

Hence, question two above must be answered, I think, in the affirmative.

3. Coming now to the consideration of question three above, concerning the right of the accused to have the Com-monwealth elect in such a case as that at bar.

In felony cases as a general rule, subject to a few excep-tions not material to be noted here, there can be but one conviction of a felony under one indictment, although in the discretion of the trial court, several separate felonies may be allowed to be charged therein, if in several counts, a separate count for each offense. Hence, the right of the accused to have the Commonwealth make the election afore-said on the trial of the case always exists in all felony cases, except in the few instances where there may be more than one conviction under one indictment. *Dowdy's Case, supra; Lazier's Case,* 10 Gratt. (51 Va.) 708; *Anthony's Case,* 88 Va. 847, 14 S. E. 834; *Johnson's Case,* 102 Va. 927, 46 S. E. 789; *Kane* v. *People,* 8 Wend. (N. Y.) 211; *Mitchell's Case,* 93 Va. 775, 20 S. E. 892.

In misdemeanor cases the rule is different. Prior to the prohibition statute we have under consideration, there might be more than one conviction of different misdemeanors under one indictment. From very early times, it has been universally held that, where the misdemeanors are of the same general nature and their punishment is the same (or, indeed, where the punishment is similar), when the mode of trial is the same and the convenience of the court or the

due administration of public justice does not require separate trials, there may be as many convictions of several different misdemeanors in one trial under one indictment as there are separate counts in the indictment charging them; and that *only* where there is *but one count* in the indictment in a misdemeanor case, which charges several of *such* different misdemeanors, does the rule apply that there can be but one conviction, in the one trial, of one misdemeanor. 1 Bishop Cr. Pr. (4th ed.), secs. 457, 458, 459, 460, 452; *Pointer* v. *U. S.,* 151 U. S. 396, 14 Sup. Ct. 410, 38 L. Ed. 208, citing 1 Chitty's Cr. Law, pp. 252-3, and Archibald (8th ed.), chap. 3, p. 95. See also to same effect *Young* v. *The King,* 3 T. R. 106; *Dowdy's Case, supra; Benton's Case,* 91 Va. 782, 21 S. E. 495; *Mitchell's Case, supra; Lewis' Case,* 90 Va. 843, 20 S. E. 777; *Fletcher's Case, supra; Peer's Case,* 5 Gratt. (46 Va.) 874.

Therefore the doctrine of the right of the accused to have the Commonwealth elect on which charge or charges in the indictment it will ask conviction, before the prohibition statute under consideration was enacted, was uniformly applied in misdemeanor cases *only* where there could not be conviction of all the offenses charged in the indictment in the one trial. And the settled rule was that there could be only one conviction of one offense in one trial in misdemeanor cases only where, either (1) there is but one count in the indictment (*Hatcher & Shaw's Case, supra; Dix's Case, supra,* in which there was only one count in the indictment), or (2) where it is made to appear to the trial court that the accused would be "injured in his defense by the joinder" (of several distinct misdemeanors, different in their nature and in their punishment or mode of trial), "or for its (the court's) own convenience, or to conserve the administration of public justice," such joinder should not be allowed in one trial. (1 Bish. Cr. Pr., secs. 452, 453.)

Mr. Bishop says, in 1 Bish. Cr. Pr., sec. 452: "By the practice everywhere, distinct misdemeanors may be joined in separate counts of one indictment, to be followed by one trial for all, and by conviction for each, the same as though all were charged in separate indictments; subject to practical limitations from judicial discretion. Thus, * * * in liquor-selling, when made by statute a misdemeanor, with a fine for each sale, several counts for distinct sales may be combined in one indictment, and the accumulated penalty imposed." (See also the quotation from 1 Bish. Cr. Pr., sec. 458, above.) Mr. Bishop adds (*Idem*, sec. 453): "As limiting this doctrine—the court, to protect the defendant from being injured in his defense by the joinder, or for its own convenience, or to conserve the due administration of public justice, will on application quash a part of the counts or *put the prosecutor to elect, or otherwise,* as and if the judicial discretion indicates. Therefore * * * the joinder will be thus restrained if the offenses are of *different natures,* or especially if the punishments are not the same * * * " (Italics supplied.)

Hence, touching the rule (2) above referred to, by which the judicial discretion of the trial court is guided (independent of statute), in not allowing the joinder of different offenses in misdemeanor cases, clearly, as shown by the authorities, the number of such offenses, or that the offenses are *"widely separated by time,* place and circumstances," are not grounds upon which the judicial discretion to apply such rule can be invoked. (1 Bish. Cr. Pr., secs. 452, 458.) I am constrained, therefore, to the view that the majority opinion, in laying down a contrary rule, is suggesting a new proposition, unknown to the law heretofore. The rule laid down by Mr. Bishop was the established practice in Virginia, independent of the aid of any statute. In *Mitchell's Case, supra,* it is said: "In the case, however, of misdemeanors, which are punishable by fine and imprisonment,

the prosecutor is permitted to join and try several distinct offenses in the same indictment and without being required to elect on which charge he will proceed." In *Peer's Case, supra,* it was held that there might be a trial of the charges in one indictment in two separate counts of two separate offenses of illegal sales of ardent spirits to two different persons. In *Lewis' Case,* the one indictment contained ten counts, each charging a sale to a different person, which constituted separate and distinct offenses. There was a demurrer to the indictment in the trial court, which was overruled. There was a conviction for three of the offenses charged, three fines of $100.00 each imposed, and a sentence of thirty days' imprisonment in the county jail. This court, in its opinion delivered by Hinton, J., said: "The counts are couched in the usual formal language adopted in such cases, and advised the defendant fully of the specific charges he was called upon to answer, and the demurrers thereto were properly overruled." The convictions were sustained by the court. Similarly, in *Fletcher's Case, supra,* the accused, in one trial, under one indictment, which charged "within twelve months last passed" fifteen different sales of ardent spirits to fifteen different persons named, and a sixteenth sale without naming any person to whom it was made, was convicted of the sixteen different offenses charged (which must have been committed at different times) and the fines aggregated the sum of $3,200. It is true no objection seems to have been made by the accused to being charged with and tried for the several different offenses in one trial under one indictment, but he could have made no such valid objection after the decisions of this court in *Peer's Case, supra,* where such precise objection was unsuccessfully made, and *Lewis' Case, supra,* where the precise objection was not made, but where there was a demurrer to the indictment which had the effect of presenting of record to the appellate court the defect in the in-

109

dictment, if one existed; and counsel in the case and this court evidently considered the practice settled and not open to valid objection. *Peer's Case, Lewis' Case* and *Fletcher's Case,* therefore, show what was the established practice on the subject in this State prior to the prohibition statute in question, certainly with respect to distinct offenses consisting of different sales of ardent spirits being charged and conviction therefor being had in one trial. [As above noted, in *White's Case, supra,* and subsequent cases in this State, it is held, under a statute such as the prohibition act in question, making the statutory offenses created thereby such offenses if they occur *anywhere* in the State, or *with any person* whatsoever, that allegations of the *place* of the commission of the offenses (other than the laying of the venue), and of any *person* connected with the commission of the offense (other than the accused—as of the person or persons to whom illegal sale or sales is or are made), are unnecessary.]

Now concerning joinder (independent of a statute authorizing it) of the other offenses created by section 3 of the act, with charges of illegal sales, in one indictment followed by the trial and conviction of all of them in one trial: As we have seen above, the general rule prevailing in the English and most American courts is, that where a course of unlawful conduct is charged (as in the indictment in the instant case) in violation of a statute, an unlimited number of petty offenses (misdemeanors), resulting from any such conduct, may be properly joined in one indictment and one trial. 1 Bish. Cr. Pr., sec. 458. It is not apparent, as an abstract proposition, that it would be more injurious to the accused to have to defend in one trial a charge of illegal manufacturing, joined with a charge of illegal selling of ardent spirits, or several of either, in violation of the same statute, than so to defend a number of charges of such different sales only, *widely separated in*

*time and place.* And so as to the other statutory offenses under section 3 of the act. If, however, it were made to appear to the trial court that, because of peculiar circumstances or situation of the accused, such joinder of offenses in one indictment and trial *would in fact* injure his defense, undoubtedly (independent of statute authorizing such joinder) the trial court would have the discretion, on motion to quash, or on motion to have the Commonwealth elect as aforesaid, to give the proper relief to the accused. But even in such case the peculiar situation aforesaid must be made to appear to the trial court, by the motion or otherwise, before it could be required to exercise its discretion aforesaid in the matter, and before this appellate court could be asked to review and reverse the action of the trial court on the subject. This was not done in the instant case.

Further: Touching the rule (2), above referred to, by which the judicial discretion of the trial court is guided (independent of statute) in not allowing the joinder of different offenses in misdemeanor cases, where "the punishments are not the same." As we have seen above, the indictment in the instant case is for first offenses under section 3 of the act, and the punishment for each offense charged in the indictment are, under section 5 of the act, the same.

Now section 7 of the prohibition statute, in the view I take of it, did not go beyond allowing to be charged in one count of the indictment the several different offenses which, under the established practice in this State prior thereto, might have been properly charged therein under separate counts, and allowing the several convictions to follow accordingly in the one trial. In this matter also, therefore, the statute under consideration merely adopted and made statutory the rule on the subject already settled by this court, with the sole modification that the statute applies the rule to an indictment containing the several charges in only one count.

But, if this were not so, clearly the statute allows the joinder of the charges named in section 7 of the statute, in one count of the one indictment, and, as a statutory rule of procedure, it is valid, even if it changes the common law rule on the subject, since it infringes, as we have above seen, on no constitutional limitation of the legislative power of enactment in this behalf. Moreover, the statute on this point being constitutional, it took away the judicial discretion aforesaid theretofore existing to disallow joinder in one trial of separate offenses differing in their nature, to the extent of those named in section 7 of the act, expressly thereby allowed to be joined. As to the joinder of such offenses as are there named, the legislature has spoken, in the exercise of its discretion, and the statutory enactment has superseded the judicial discretion theretofore existing.

That this is true will even more clearly appear from the following further considerations:

The doctrine of the election aforesaid was applied to misdemeanor cases of the character of the instant case, for the reasons so lucidly expressed by Judge Buchanan in the leading case on this subject aforesaid (*Hatcher & Shaw's Case,* 106 Va., at pp. 830-1, 55 S. E. 677). Such reasons apply only to a case where there cannot be conviction in the one trial of all the offenses charged in the indictment. (In that case there could be but one conviction as the law then stood, because there was but one count in the declaration.) To cases in which, in one trial, there cannot be conviction of all of the offenses charged, such reasons are properly applicable. But not so as to a case where there can be conviction in the one trial of all the offenses charged. If in a case where there can be more than one conviction, the Commonwealth may be compelled to elect one offense charged, or two, or three, or any number of such offenses, for which it will ask for conviction, less in number than all of the of-

fenses charged in the indictment, manifestly the Commonwealth may thereby be deprived of its right to try and convict the accused *of all* of the offenses charged, and properly charged, in the indictment. If the rule were construed to mean that the Commonwealth *may elect* to rely upon *all* of the offenses charged for which it will ask conviction, this rule would amount to nothing; the whole matter would be left, after all, in the discretion of the Commonwealth's attorney. There, indeed, it is left, and, I think, properly left by the statute in question. It could not be otherwise without depriving the Commonwealth of its well settled right, without the aid of said statute, to prosecute, try and convict the accused, in one trial, if it chooses and can prove his guilt, of a number of separate and distinct misdemeanors, provided the indictment therefor is found by a grand jury and is in legal form, and contains only charges of offenses of which there may be conviction of all in one trial, and, since the statute clearly confers such a right on the Commonwealth, a different rule of practice would repeal the statute on this subject.

In regard to the point urged for the accused in the instant case, that for the offense of "advertising" charged in the indictment, a different mode of trial is prescribed by section 19 of the act than is prescribed for the offenses created by section 3 of the act, and that for this reason such offense cannot be joined with the other offenses charged in the indictment. It is true that (independent of statute) where *the mode of trial* is not the same, there can be non-joinder of the offenses in the same indictment (1 Bisch. Cr. Pr., section 453) ; but under the rules applicable to the construction of statutes, section 19 of the act must be held to refer to advertising by methods specified in that section, and section 3 to advertising in some method other than those specified in section 19 aforesaid. This relieves the court from the consideration, in the instant case, of

whether the statute permits misdemeanors to be joined in one indictment which have prescribed for them a different mode of trials, and whether such a change of the common law rule on the subject would be unconstitutional.

It may be proper to add that the majority opinion seems to consider the procedure by motion of the accused to have the Commonwealth elect as aforesaid as in aid of the indictment in the lack of sufficient specifications in its charges to inform the accused of the "cause and nature of his accusation" to enable the latter to prepare his defense. Such motion is wholly unsuited to serve such a purpose. It comes too late therefor. It is settled that it is properly to be entertained by the court only after the Commonwealth has closed its introduction of evidence in chief, *Hatcher & Shaw's Case, supra.* It is manifestly then too late for the Commonwealth to furnish the accused with specifications of "the cause and nature of his accusation," to comply with that constitutional requirement, or aid in complying with it, in any true sense, or substantial way.

The use of the motion in practice has been a wholly different one. Where there cannot be conviction in the one trial of all of the offenses charged in the indictment, the accused is informed on what charge or charges the conviction which can be had is asked. Thus time and expense to the accused is saved in rendering it unnecessary for the latter to offer evidence to meet other charges and the mind of the jury is brought to the consideration of a single offense. *Hatcher & Shaw's Case, supra.* These are important results, but, aside from the impracticability of their attainment without unduly taking away the rights of the Commonwealth, aforesaid, in cases where there may be conviction in a single trial of all of the offenses charged, above noted, they are objects entirely different from that of having the accused notified, in time to prepare his defense, of what charges he must come to trial prepared to meet. Hav-

ing, upon his coming to trial, prepared himself to meet *all of* the charges, as he must do, if he acts wisely under the procedure of the motion to elect, that procedure could in no case, even under the practice prevailing before the prohibition statute, in any degree relieve the accused of that burden. The motion to elect, therefore, could never, in our practice, have taken the place of a bill of particulars, or have aided an indictment in its lack of proper specific allegation of the particulars of the offense charged, for the purpose for which such specific allegations are said to be needed. The motion to quash, however, would serve this purpose. By the latter motion the accused can obtain such particularity in specific allegations of the indictment as may be required by the Constitution or otherwise by law.

In regard to the point urged in the petition that the verdict should have specified of which of the offenses charged in the indictment the jury found the accused guilty, because otherwise the verdict is no protection against future prosecutions, it should be said that, all of the offenses charged in the indictment having been properly charged, the accused, by the trial thereunder, has been put once in jeopardy for all of those offenses committed "within twelve months last past" next preceding the indictment, and can plead *autrefois convict* or *autrefois acquit* in bar of any subsequent prosecution for any and all of such offenses within such period.

In connection with all of the foregoing views and conclusions, it is assumed that the grand jury, in the instant case, in fact found a true bill against the accused for all of the several offenses charged in the indictment. It is elementary law that the accused could not be put to trial for any of such offenses for which he was not indicted, where the statute, as in the instant case, requires the procedure by indictment. The indictment is the safeguard provided by the statute to save the accused from unfounded charges. To illustrate: If it be true that the grand jury in fact

found a true bill against the accused for only one of the offenses charged in the indictment, or two, or any number less than the whole number of offenses so charged, and yet left, in the form of indictment as prepared and sent in to the grand jury by the Commonwealth's attorney, another charge, or other charges, of offenses as to which they did not find a true bill, it is manifest that they went beyond what the true construction of section 7 of the statute aforesaid authorizes. Necessarily, the true construction of such section is that the grand jury may use the form thereby prescribed in its statement of the several offenses therein named to the extent that a true bill is found by them with respect to the charge or charges of the commission by the accused of such offenses, and no further. Otherwise, as indicated above, the statute would be construed to authorize the trial of the accused upon charges upon which there has been no indictment of him by a grand jury.

This indeed would be a hardship—is in truth the chief hardship of which the accused complains in the instant case —and, if it appeared of record to exist in such case, the judgment should be unhesitatingly reversed. But the indictment in the instant case does not merely follow the form of the indictment provided for in section 7 of the act; it does not contain the charges of all the offenses therein named. This is some indication that the grand jury, in the instant case, found a true bill as to all of the offenses in fact charged in the indictment. However, after indictment found and the grand jury is discharged, their proceedings in this particular cannot be inquired into. The trial court, indeed, before the discharge of the grand jury, has the whole matter under its control. It may, by polling the grand jury and inquiry as to what charges stated in the indictment they have found a true bill, ascertain that fact and eliminate any chance of charges being left in the form of the indictment as drawn and retained therein as charges as to which a true bill is found, when in fact no true bill

is found with respect thereto. In view of the danger of such error occurring, it would be the better practice for the trial court, upon its own motion, to adopt this procedure in dealing with indictments under said section 7. If it does not, the acused, if present when the indictment is presented to the trial court by the grand jury, may by motion have the trial court pursue this course of procedure. If the accused is not present, or, if present, does not make such motion, and the grand jury presents the indictment in the form in which it is in the instant case as a true bill, and is discharged, or in any case, in whatever form the grand jury, on being discharged, leaves the indictment as its presentation thereof to the trial court, such indictment, as in fact presented to such court, must be taken by the trial court and by this court to be the indictment found by a grand jury. The subject cannot be further inquired into after the grand jury has been discharged.

Manifestly, the question as to whether there is a lack of a true bill as to any of the charges stated in the indictment cannot be raised by the motion to have the Commonwealth elect on which charge, or charges, it will ask for conviction. Such question must and can be raised only in the preliminary proceedings aforesaid before the trial court, before the discharge of the grand jury.

The question under consideration not having been raised in the instant case so as to make the fact appear of record that the accused were tried for any offense or offenses for which they were not in fact indicted, I think there should be no reversal of the judgment of the trial court on such ground.

I concur in the other conclusions reached in the majority opinion on the special points arising in the instant case, and in the result of affirmance of the judgment of the court below.

For the foregoing reasons, however, I feel constrained to file this separate opinion.